TYSON, Judge.
*597 Daris Lamont Spinks ("Defendant") appeals from judgments entered upon jury verdicts convicting him of two counts of statutory sexual offense, one count of statutory rape, and two counts of indecent liberties. We find no error in Defendant's convictions. We dismiss Defendant's appeal of the trial court's order on lifetime satellite based monitoring ("SBM") without prejudice.
I. Factual Background
A. State's Evidence
The State's evidence tended to show the victim ("Amy") and Defendant knew each other through Amy's older sister, Alexis, for a period of about five years. When Amy's sister had her own apartment, Amy would visit and Defendant would bring his 10-year old daughter over. Amy testified at one of these visits Defendant attempted to pull her pants down and put his lips to her bottom to make a noise.
Amy testified Defendant and her sister had a baby daughter together. She testified Defendant, Alexis and their baby daughter stayed at Amy's house twice in December 2014. Amy was 13 years old at this time. Around 1:00 a.m. on the first night, Defendant entered Amy's room and threatened to harm her if she said anything. Defendant pulled down her pants and touched her buttocks, stomach, and breasts. Defendant then engaged in *598 vaginal intercourse with Amy. Amy pushed him away. Defendant then performed cunnilingus upon her. Amy told him to stop, but he continued. Defendant told Amy if she told anyone, his child would be taken away, and he would hurt Amy or have someone else hurt her.
The next time Defendant stayed at Amy's house in December 2014, Amy set up a computer tablet in her room to record any other incidents which may occur. Defendant entered Amy's room during the night and threatened to hurt her. Defendant again engaged in vaginal intercourse with and performed cunnilingus on Amy. He left Amy's room when his child began to cry in another room. Amy told Defendant the following morning that she had recorded him. Defendant repeated to Amy that his child would be taken away if she told anyone. He told Amy he would kill her.
Several days later, Defendant gave Amy a new pair of Nike shoes. Defendant told her the shoes were provided for her to "shut up" and to delete the video. Amy deleted the video, while in front of Defendant, and accepted the shoes.
Amy told Defendant sometime in mid-January she was going to report the incidents. Soon thereafter, a rock was thrown through her window in the middle of the night. Defendant came to Amy's house the following day to look at the window. While Defendant was *353 in the home, Amy told him she was going to tell someone about his assaults. Amy testified Defendant told her he was going to kill her.
A few days later, Amy told her mother that Defendant had sexually assaulted her in December. Amy, her mother, and brother went to the police department two days later to report the sexual assaults.
Dr. Stacy Thomas testified she had practiced as a pediatrician for over ten years. Dr. Thomas estimated she has examined over 500 child victims of alleged sexual abuse. Dr. Thomas was qualified as an expert witness in pediatrics, especially the evaluation and treatment of physically and sexually abused children. She was admitted to testify as an expert witness without Defendant's objection.
Dr. Thomas testified she physically examined Amy on 16 March 2015. Prior to the examination, Dr. Thomas was briefed about the contents of an interview of Amy by Greensboro Police Detective Hines. Detective Hines told Dr. Thomas that Amy had disclosed one act of cunnilingus and one act of vaginal intercourse by Defendant. Dr. Thomas testified Amy exhibited symptoms "consistent with depression and anxiety." Amy's physical examination revealed she was in good physical health, and her external genital and anal exams were normal. During Amy's exam, Amy became hysterical, cried and shook.
*599 Dr. Thomas compiled her findings into a report after completing her examination of Amy. This report was admitted into evidence without Defendant's objection.
The State offered the testimony of child witness ("Katy") over Defendant's Rule 404(b) and Rule 403 objections. Katy testified she was six years old in 2011. Katy testified she went to her friend's birthday party, where Defendant and Defendant's daughter also attended. Katy testified the party included a sleep over. Katy testified Defendant opened the door to the bedroom during the night where she and her friend slept, but closed it after both girls woke up. Katy testified someone had later entered into the room and engaged in anal intercourse with her. Katy identified Defendant as the person who had sexually assaulted her. After the assault, Defendant told Katy to be quiet and he would give her a dollar. Katy testified the next morning Defendant gave her a dollar.
B. Defendant's Evidence
Keisha Oats, testified Defendant was her nephew. Ms. Oats testified Defendant, Alexis, their baby, and Alexis' sister, Amy, visited at her home on Christmas Eve 2014. Ms. Oats testified Defendant and the others left her home around 1:30 am.
Defendant testified when they left Ms. Oats home on Christmas Eve, he, Alexis, their baby and Amy went to Amy's mother's home, where he and Alexis had cooked and wrapped presents. Defendant denied performing any sexual acts upon Amy in December of 2014 and January of 2015, threatening Amy in December of 2014 and January of 2015, and going to Amy's home on New Year's Eve 2014 and giving Amy a pair of shoes.
Defendant testified he found out about Amy's allegations after the Super Bowl in February and Detective Hines had contacted him soon thereafter. Defendant met with Detective Hines and denied the allegations. Defendant also denied the allegations against him by Katy. Defendant admitted he had stayed overnight at Amy's home on Christmas Eve and on another night around Thanksgiving of 2014.
The jury returned verdicts finding Defendant guilty of two counts of statutory sexual offense of a person who was thirteen years old, one court of statutory rape of a person who was thirteen years old, and two counts of indecent liberties. The trial court sentenced him to two consecutive terms of 280 to 396 months in prison, and ordered lifetime sex offender registration and SBM. Defendant appeals.
*600 II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015) and N.C. Gen. Stat. § 15A-1444 (2015).
III. Issues
Defendant asserts three issues on appeal: (1) testimony from Katy concerning a previous alleged assault was improperly admitted under Rule 404(b) and unfairly prejudicial to *354 him under Rule 403; (2) the trial court committed plain error by admitting Dr. Thomas' expert diagnosis and opinions, and he received ineffective assistance of counsel on this matter; and (3) the trial court erred by ordering Defendant to a lifetime registration on the sexual offender registry and SBM.
IV. Katy's Testimony
Defendant contends the trial court erred in admitting testimony from Katy under Rule 404(b). He argues the alleged acts at issue were different, the children were of significantly different ages, the circumstances surrounding the alleged assaults were different in nature, and the circumstances following each of the alleged acts were different.
A. Standard of Review
Our Supreme Court has held:
when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
State v. Beckelheimer , 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).
"A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." State v. Hayes , 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citation omitted).
*601 B. Analysis
1. Rules 401 and 402
" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2015). "All relevant evidence is admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (2015).
2. Rule 404(b)
Our Supreme Court has held "a careful reading of Rule 404(b) clearly shows, evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." State v. Weaver , 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986) (citing 1 Brandis on North Carolina Evidence § 91 (2d rev. ed. 1982)).
The rule lists numerous purposes for which evidence of prior acts may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. This list is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime. In addition, this Court has been markedly liberal in admitting evidence of similar sex offenses by a defendant.
Beckelheimer , 366 N.C. at 130, 726 S.E.2d at 159 (internal citations and quotation marks omitted).
North Carolina courts have interpreted Rule 404(b) as a rule of inclusion , not exclusion. Id. at 131, 726 S.E.2d at 159. This inclusion is constrained by the requirements of similarity and temporal proximity of the evidence of the acts. State v. Al-Bayyinah , 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002).
Rule 404(b) is "subject to but one exception requiring the exclusion of evidence if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Lyons , 340 N.C. 646, 668, 459 S.E.2d 770, 782 (1995) (emphasis original) (citation omitted).
The record indicates the State offered Katy's testimony to establish Defendant had a common scheme or plan to commit assaults upon young females. The trial court determined Katy's testimony to be "very *602 similar to what the allegations are in this case" and "if [the State] [is] offering to show there is an existence in the mind of the defendant, a common scheme or plan in the crime involved and the charge in this case, I think it's admissible." *355 Defendant argues the allegations are too dissimilar to show a common scheme or plan. Defendant relies upon State v. Gray , which found the proffered 404(b) evidence was not "substantial evidence tending to support a reasonable finding by the jury that the defendant committed [a] similar act." State v. Gray , 210 N.C. App. 493, 512, 709 S.E.2d 477, 490-91 (2011) (emphasis original) (citations and quotations omitted). In Gray , the defendant engaged in forcible anal intercourse with a young boy at night and later sexually assaulted a young girl by inserting his finger into the girl's vagina during daylight hours. Id. at 511-12, 709 S.E.2d at 490. The defendant was a guest in the home where each child victim was staying. Id. at 512, 709 S.E.2d at 490.
This Court held the similarities in the two acts "show little more than that the alleged perpetrator of both acts was attracted to young children, and that he used the fact that he was a welcome guest in the house where each child was staying to find time alone with that child in order to commit the assaults." Id. This Court recognized "[t]hese facts are all too common in cases involving sexual assaults on minors by an adult." Id.
The case and incidents before us are distinguishable from Gray . Amy and Katy are of the same sex; Defendant allegedly had forcible intercourse with both of them; and the assaults took place during the early hours of the morning. In addition to these factors, here Defendant was a guest in the home where each child was staying, entered their bedrooms well after midnight, and later bribed both victims for their silences.
"Our case law is clear that near identical circumstances are not required; rather, the incidents need only share some unusual facts that go to a purpose other than propensity for the evidence to be admissible." Beckelheimer , 366 N.C. at 132, 726 S.E.2d at 160 (citation and quotations omitted).
Here, Katy's testimony tended to prove Defendant had a common scheme or plan to have (1) intercourse; (2) with young female children who were asleep; (3) at night; (4) while he was a guest staying overnight in a home; and (5) offered a bribe to his victims afterwards to buy their silence. The trial court correctly concluded that Katy's testimony was *603 offered to show a purpose other than simply Defendant's propensity to commit the crimes.
[E]ven though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried.
State v. Bagley , 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (emphasis original) (citation and quotations omitted).
The purpose of the evidence was relevant to show the common scheme or plan held by Defendant, although this evidence may also tend to show Defendant's propensity to commit sexual assaults. See id. ("evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them ....").
Record evidence demonstrates the trial court's admission of the 404(b) evidence was not arbitrary or the result of an unreasoned decision. We find no error in the admission of Katy's testimony under Rule 404(b).
3. Rule 403
Admissible evidence under Rule 404(b) must also meet the criteria of Rule 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2015). Otherwise admissible evidence, whose probative value is outweighted by the danger of unfair prejudice, is inadmissible under this rule. State v. Scott , 331 N.C. 39, 43, 413 S.E.2d 787, 789 (1992). However, "[e]vidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." State v. Coffey , 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (citation omitted). It is within the trial court's discretion whether to admit such evidence. Id.
*356 Defendant argues the testimony of alleged anal intercourse against a much younger child by a much older adult, inflamed the jury to compel his conviction. The evidence showed Defendant's common scheme or plan to have forcible intercourse with young female victims asleep in their bedrooms, while he and his daughter were guests staying overnight in a home and to bribe the victims afterwards for their silence. The *604 probative value of Katy's testimony, although prejudicial, did not substantially outweigh the danger of unfair prejudice. Defendant has failed to show the trial court abused its discretion in admitting Katy's Rule 404(b) testimony under Rule 403.
V. Dr. Thomas' Testimony
Defendant next argues the trial court committed plain error by admitting (1) Dr. Thomas' assessment of "Child sexual abuse" and (2) her expert opinions which impermissibly bolstered and vouched for Amy's credibility. Defendant acknowledges he did not preserve these errors by objection at trial. Defendant also argues that because of this plain error, he received ineffective assistance of counsel.
A. Standard of Review
Unpreserved errors in criminal cases are reviewed only for plain error. N.C.R. App. P. 10(a)(4) ; State v. Black , 308 N.C.736, 739-41, 303 S.E.2d 804, 805-07 (1983).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).
Defendant must show an error occurred and that the error was "fundamental" such that the jury "probably would have returned a different verdict[,]" to receive a new trial. Id. at 519, 723 S.E.2d at 335.
B. Analysis
1. "Child Sexual Abuse"
Our Rules of Evidence prohibit an expert witness from commenting on the credibility of another witness. State v. Wise, 326 N.C. 421, 426, 390 S.E.2d 142, 145, cert. denied, 498 U.S. 853, 111 S.Ct. 146, 112 L.Ed. 2d 113 (1990). "[A]n expert may not testify that sexual abuse has occurred without physical evidence supporting her opinion." State v. Towe , 366 N.C. 56, 60, 732 S.E.2d 564, 567 (2012) (citation and quotation marks omitted). "However, if a proper foundation has been laid, an expert may testify about the characteristics of sexually abused children and whether an alleged victim exhibits such characteristics." Id. at 62, 732 S.E.2d at 567-68 (citation and quotation omitted).
*605 Defendant asserts his case is controlled by Towe . The expert in Towe was the director of the child sexual abuse team at the local hospital. Id . at 63, 732 S.E.2d at 569. The jury heard she was a published author in the field of sexual exploitation of children and had frequently been qualified as an expert in pediatrics and child sexual abuse in previous cases. Id. at 63-64, 732 S.E.2d at 569.
The expert in Towe testified that between 70-75% of children who have been sexually abused have no abnormal physical findings, and she would place the victim in that category. Id. at 60, 732 S.E.2d at 566. The Supreme Court found this testimony to be improper and qualified as plain error. Id. at 64, 732 S.E.2d at 568.
Dr. Thomas testified to general characteristics of abused children, but did not offer an opinion that Amy had been sexually abused, or that Amy fell into the category of children who have been sexually abused, but who showed no physical symptoms of such abuse. The report published to the jury includes a statement "Chief Concern: Possible child sexual abuse." The controverted statement in Dr. Thomas' examination report of Amy is a paragraph titled "ASSESSMENT AND RECOMMENDATIONS," where the paragraph begins with "Child sexual abuse by [Amy's] disclosure."
While the jury has the duty to weigh the credibility of the expert's testimony, the expert's *357 opinion tendered in Towe left little room for the jury to find the victim incredible. The proffered testimony by the expert in Towe impermissibly bolstered the credibility of the child victim. Towe , 366 N.C. at 63, 732 S.E.2d at 568. Dr. Thomas' testimony was not conclusory and left the ultimate issue to the jury to determine whether the facts and circumstances of the case were explainable by the possibility presented by Dr. Thomas.
Dr. Thomas did not offer an opinion that Amy had been sexually abused. The phrase in her report merely introduces the paragraph of the report dealing with Amy's disclosures. Dr. Thomas' testimony did not impermissibly bolster or vouch for Amy's veracity. See id. Defendant's argument to the contrary is overruled.
2. "Consistent," "Compelling" and "Concerning"
Defendant argues Dr. Thomas' statements in her written report published to the jury that Amy's disclosures have been "consistent and compelling" and subsequently that she "agree[s] with law enforcement in this compelling and concerning case" served to impermissibly bolster Amy's credibility.
*606 Defendant argues State v. Aguallo , State v. O'Connor and State v. Frady require a new trial in this case. In Aguallo , the expert testified she thought the child victim "was believable." State v. Aguallo , 318 N.C. 590, 599, 350 S.E.2d 76, 81 (1986). The Supreme Court held this was an impermissible expert opinion as to the credibility of the victim. Id. at 599, 350 S.E.2d at 81. The Court in Aguallo found the error to be prejudicial and allowed a new trial where the State's evidence of the defendant's guilt was "not overwhelming." Id. , 350 S.E.2d at 82.
In O'Connor , the expert testified she had found no physical indications of sexual assault. State v. O'Connor , 150 N.C. App. 710, 711, 564 S.E.2d 296, 297, disc. review denied , 356 N.C. 173, 567 S.E.2d 144 (2002). She stated the victim had told her he had been sexually assaulted on three occasions. Id. The expert's written report of her findings and conclusions was admitted into evidence without objection. Id. The report contained the statement, "It is my impression that [J.M.'s] disclosure was credible." Id. This Court held it was plain error to admit into evidence that portion of the report. Id. at 712, 564 S.E.2d at 297.
In Frady , the expert neither examined nor interviewed the victim. State v. Frady , 228 N.C. App. 682, 684, 747 S.E.2d 164, 166 (2013). The trial court allowed the expert witness to testify that the victim's "disclosure [was] consistent with sexual abuse." Id. This Court held the expert's statement was "essentially" an expression of her opinion that the victim was credible. Id. at 686, 747 S.E.2d at 167. The Court held this admission to be a prejudicial error where the only evidence of the defendant's guilt was the victim's testimony and the State offered the expert testimony as rebuttal, being the last testimony the jury would hear before retiring to deliberate. Id.
Our appellate courts have repeatedly held that it is not improper for an expert to testify to a victim's examination being "consistent" with the victim's statements of abuse. State v. Kennedy, 320 N.C. 20, 31-32, 357 S.E.2d 359, 366 (1987) (no error to admit physician's opinion that victim's symptoms were consistent with sexual abuse); State v. Wise , 326 N.C. 421, 427, 390 S.E.2d 142, 146 (1990) (no error where expert merely described her personal observations concerning the emotions of the victim during the counseling sessions); State v. Marine , 135 N.C. App. 279, 281, 520 S.E.2d 65, 66 (1999) (no error where expert testified that one of the indicators that she used to conclude victim suffered from post-traumatic stress syndrome was that the victim "has experienced actual or threatened serious injury ....").
While our courts have allowed admission upon proper foundation, an expert opinion that the victim's symptoms or physical examination *607 are "consistent" with the victim's statements of abuse, Defendant asserts Dr. Thomas' use of the terms "consistent and compelling" and "compelling and concerning" are tantamount to stating Amy's allegations are credible.
Our "courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence."
*358 State v. Bailey, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988).
At oral argument, Defendant argued the problematic word here is "compelling." Dr. Thomas' report contains the term "compelling" twice. In the first use, Dr. Thomas' written statement is "Her disclosures have been consistent and compelling." Merriam Webster offers three definitions of compelling as "forceful," "demanding attention" or "convincing." Compelling Definition , MERRIAM-WEBSTER.COM , https://www.merriam-webster.com/dictionary/compelling (last visited Oct. 26, 2017). The term "compelling" as used here could be construed as impermissible opinion testimony regarding Amy's credibility. Bailey, 89 N.C. App. at 219, 365 S.E.2d at 655.
The second use, the expert witness' agreement with "law enforcement['s] involvement in this compelling and concerning case" is not as troubling. The context of this statement reveals Dr. Thomas used the terms "compelling" and "concerning" to connote forceful, demanding attention, gut-wrenching, troubling, worrying or any of the many other adjectives that could describe the sex offenses.
Presuming arguendo , the court's admission of the statements in the doctor's report was error, we must determine whether it rises to the level of plain error. "A plain error is one so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Carroll , 356 N.C. 526, 539, 573 S.E.2d 899, 908 (2002). Thus our question is whether the jury would probably have reached a different verdict if this testimony had not been admitted. Bagley, 321 N.C. at 213, 362 S.E.2d at 251.
In State v. Hammett , 361 N.C. 92, 97, 637 S.E.2d 518, 522 (2006), our Supreme Court held the expert witness improperly vouched for the child victim's credibility when the expert added "that she would reach the same conclusion based on [the child victim's] history alone and that the physical evidence was not a necessary basis for her conclusions" to her previous admissible testimony that her findings were consistent with abuse. While the Court held the admission of this part of the expert's testimony was *608 error, the Court recognized, as here, the issue had not been preserved by the defendant and applied plain error review. Id. at 98, 637 S.E.2d at 522. Under a plain error review, the Supreme Court "believe[d] the jury would not have acquitted defendant if the challenged statements had been excluded." Id. at 99, 637 S.E.2d at 523.
Here, the victim testified and described in detail about the alleged assault. The State offered witnesses, who corroborated Defendant's access to the victim, as well as a 404(b) witness showing Defendant's common scheme to have intercourse with young females. This other evidence along with Dr. Thomas' trial testimony of Amy's demeanor, emotional state and behavior since the alleged incident provide sufficient other evidence of Defendant's guilt. Defendant has failed to show prejudice in the trial court in the admission of Dr. Thomas' statements and reports. The trial court's admission of Dr. Thomas' statements in her report that Amy's disclosures have been "consistent and compelling" does not rise to the level of plain error.
3. Ineffective Assistance of Counsel ("IAC")
Defendant asserts an alternative argument if this Court does not find plain error in the admission of Dr. Thomas' report. Defendant argues his counsel was ineffective because he failed to object when the State tendered Dr. Thomas as an expert witness or when the State introduced Dr. Thomas' report. "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." State v. Braswell , 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984) ).
To meet this burden, Defendant must satisfy Strickland 's two-part test:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors *359 so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland , 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
*609 IAC claims brought on direct review are "decided on the merits when the cold record reveals that no further investigation is required." State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 525 (2001) cert. denied, 535 U.S. 1114, 122 S.Ct. 2332, 153 L.Ed. 2d 162 (2002). Our Supreme Court has recently held that whether defense counsel "made a particular strategic decision remains a question of fact, and is not something which can be hypothesized" by an appellate court on direct appeal. State v. Todd , 369 N.C. 707, 711-12, 799 S.E.2d 834, 838 (2017).
Defendant presents attorney conduct that cannot be determined by the "cold record" alone. We dismiss Defendant's IAC claim without prejudice.
VI. Lifetime SBM
Defendant petitions this Court issue our writ of certiorari to hear his appeal. We allow Defendant's petition to review his claim. He asserts the State failed to establish his enrollment in SBM constituted a reasonable search under the Fourth Amendment as required by Grady v. North Carolina , --- U.S. ----, ---- - ----, 135 S.Ct. 1368, 1370-71, 191 L.Ed. 2d 459, 462-63 (2015). This Court has made it clear that "the State shall bear the burden of proving that the [satellite-based monitoring] program is reasonable." State v. Blue , --- N.C. App. ----, ----, 783 S.E.2d 524, 527 (2016) ; State v. Morris , --- N.C. App. ----, ----, 783 S.E.2d 528, 530 (2016).
The transcript of Defendant's SBM hearing shows:
[Prosecutor]: Your Honor, looking at the AOC-CR 615 form, Judicial Findings and Order Sex Offenders Active Punishment, the State would contend-
THE COURT: Do you have it filled out?
[Prosecutor]: No, sir.
THE COURT: Let's get it. You have it filled out here?
THE CLERK: No, it's not filled out.
[Prosecutor]: The State contends that number one, that would be a B1 sexually violent offense.
THE COURT: That's also a rape of a child.
[Prosecutor]: No, sir, that's a different statute. That is under the age of 13.
THE COURT: A B1?
[Prosecutor]: Yes, sir.
*610 THE COURT: And two would be the defendant has not been classified as a sexually violent predator. Number three; the defendant is not a recidivist. Number four; the offense of conviction is an aggravated offense and that's as to the statutory rape, and five; the offense did involve the physical, mental and sexual abuse of a minor.
[Prosecutor]: Yes, sir. As to the order, we would contend number one should be A; natural life registration because you find one of the factors two to four was found in the affirmative.
THE COURT: For his natural life?
[Prosecutor]: Yes, sir, and satellite based monitoring, I believe 2B, which is because the aggravating factors were found in the affirmative.
THE COURT: That's correct, 2B?
[Prosecutor]: Yes, sir.
THE COURT: All right. I'm going to find that he has been convicted of a reportable conviction under 14-208.6, he has a sexually violent offense. Under 14-208(5), he has not been classified as a sexually violent predator, under the procedure set out in 14-208.20, he is not a recidivist; in number three, it is an aggravated offense and it did involve the physical[,] mental[,] and sexual abuse of a minor, and the registration is going to be for his natural life upon release from imprisonment. He is enrolled in satellite based monitoring for his natural life unless terminated pursuant to the statute. That's going to be the judgment of the Court as well.
....
*360 [Defense counsel]: Your honor, I talked to my client if this were to happen we are giving Notice of Appeal.
Under our precedents, if Defendant had challenged the constitutionality of the SBM as applied to him, we would have been required to reverse the court's order of SBM. See State v. Greene , --- N.C. ----, ----, 806 S.E.2d 343, 344-45, 2017 WL 4364396, at *2 (N.C. Ct. App. Oct. 3, 2017). However, here Defendant raised no constitutional challenge at any point of this "hearing." Defendant's counsel filed no motion, objection or argument that the SBM imposed upon Defendant was an unreasonable search.
*611 In State v. Bishop , --- N.C. ----, 805 S.E.2d 367 (2017), the defendant was convicted of taking indecent liberties with a child. The trial court sentenced him to SBM for thirty years. --- N.C. at ----, 805 S.E.2d 367. At the hearing, the defendant did not challenge the court's imposition of SBM on constitutional grounds. Id. Further, the defendant did not timely file a notice of appeal. Defendant petitioned this Court for a writ of certiorari. Before this Court, the defendant argued the petition should issue and sought this Court to invoke Rule 2 of the North Carolina Rules of Appellate Procedure, because his constitutional argument was otherwise waived on appeal. Id. This Court held the defendant was "no different from other defendants who failed to preserve their constitutional arguments in the trial court, and because he has not argued any specific facts that demonstrate manifest injustice if we decline to invoke Rule 2, we do not believe this case is an appropriate use of that extraordinary step." Id. at ----, 805 S.E.2d 367.
As with the defendant in Bishop , Defendant cannot prevail on this issue without invoking Rule 2, because his constitutional argument was waived. In our discretion, we decline to invoke Rule 2 to issue a writ of certiorari to review Defendant's unpreserved argument on direct appeal. Defendant's purported appeal of his SBM is dismissed.
As with the admission of expert testimony, Defendant argues in the alternative that his counsel rendered IAC and that the designation of SBM proceedings as civil should not bar a determination that he received ineffective assistance of counsel on this issue. Defendant concedes we are bound by our precedents in State v. Wagoner , 199 N.C. App. 321, 332, 683 S.E.2d 391, 400 (2009) (holding IAC claims are only available in criminal matters and SBM is not a criminal punishment) and In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent[.]"). Defendant's argument is dismissed.
VII. Conclusion
The trial court properly allowed Katy's testimony of Defendant's sexual assault under Rules 404(b) and 403. Defendant failed to demonstrate any plain error with respect to the admission of Dr. Thomas' expert testimony and report. Defendant has waived direct appellate review of any Fourth Amendment challenge to the order requiring him to enroll in the SBM program for life.
We find no error in the jury's convictions or in the judgments entered thereon. Defendant's petition for writ of certiorari to review the trial *612 court's imposition of SBM is allowed. His appeal of SBM as applied to him is dismissed without prejudice. Defendant's IAC claims regarding the expert testimony have been prematurely asserted on direct appeal and are dismissed without prejudice. It is so ordered.
NO ERROR IN PART. IAC CLAIMS DISMISSED WITHOUT PREJUDICE IN PART.
Judge HUNTER concurs.
Judge STROUD concurs with separate opinion.