IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-218

No. COA20-541

Filed 18 May 2021

Guilford County, No. 12 CRS 81577

STATE OF NORTH CAROLINA

v.

DARIS LAMONT SPINKS

Appeal by defendant from judgment and order entered 17 May 2019 by Judge

Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals

24 March 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Scott T. Slusser, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for defendant-appellant.*

ZACHARY, Judge.

¶ 1 Defendant Daris Lamont Spinks appeals from a judgment entered upon a

jury's verdict finding him guilty of taking indecent liberties with a child, and from an

order imposing lifetime satellite-based monitoring. After careful review, we hold that

Defendant received a fair trial, free from error. However, because we conclude that

Defendant received ineffective assistance of counsel at the satellite-based monitoring

hearing, we reverse the order and remand for a new hearing on the State's application

for lifetime satellite-based monitoring.

## *Background*

### *Factual Background*

In April of 2011, six-year-old K.S.[1] attended a sleepover birthday party for her best friend Keasia along with several other children, including Defendant's daughter Tootie. The party was held at the home of Keasia's mother, Defendant's half-sister. K.S. met Defendant at the party; he told her to call him "Uncle Lamont." At some point, Tootie was injured on the trampoline, and Defendant took her to his grandmother's house, where Defendant resided. Tootie's mother picked up Tootie there, and Defendant went to a nightclub with his cousin. Defendant returned to Keasia's home later that night.

After the children jumped on a trampoline in the front yard, Keasia and K.S. went inside and watched television in Keasia's bedroom. Eventually, the two girls fell asleep in Keasia's bed. K.S. awoke when she heard someone enter the room. Defendant began touching K.S.'s back. Defendant then pulled down K.S.'s pants, "pulled his private part out and put it in [K.S.'s] behind." Defendant stopped after approximately ten minutes and left the room. Keasia was in the bed with K.S. during the encounter.

---

[1] We refer to the child victim by the initials used by the parties in order to protect her identity.

The next morning, K.S. and Keasia told Keasia's mother that Defendant had raped K.S., but no one told K.S.'s mother. One year later, in March of 2012, K.S. told her mother and her aunt that Defendant had raped her.

On 25 June 2012, Defendant was arrested.

### *Procedural History*

On 1 April 2013, a Guilford County grand jury returned indictments charging Defendant with first-degree sex offense of a child by an adult and taking indecent liberties with a child. Defendant was first represented by public defender Wayne Baucino. Upon his withdrawal, the trial court appointed attorney Joe Floyd to represent Defendant. Mr. Floyd represented Defendant for approximately three years, at which point Defendant sought to discharge him. On 15 September 2015, the trial court appointed attorney Alec Carpenter to represent Defendant.

On 22 August 2016, Mr. Carpenter moved to withdraw as Defendant's counsel. The trial court granted the motion and appointed attorney Aaron Wellman to represent Defendant.

Despite being represented by counsel, on 13 October 2016, Defendant filed a *pro se* motion for speedy disposition pursuant to N.C. Gen. Stat. § 15A-711. Defendant's case was thereafter calendared for trial for the week of 13 February 2017. However, on 1 February 2017, Defendant moved to continue trial of this matter, which the trial court granted. At the same hearing, the trial court also denied

Defendant's 13 October 2016 motion for speedy disposition, concluding that the State had complied with its obligations pursuant to N.C. Gen. Stat. § 15A-711 by calendaring the matter for trial for 13 February 2017. The court further concluded that "all days from February 13th, 2017 through such date that Defendant, through Attorney Wellman, and the State . . . designate as an agreed-upon trial date shall not count against the six month period in which the State was required to proceed upon the filing of Defendant's motion dated October 13th, 2016."

¶ 9    While still represented by Mr. Wellman, on 1 May 2017, Defendant filed another *pro se* motion and request for dismissal, alleging a violation of his right to a speedy trial on the grounds that more than six months had elapsed since the filing of Defendant's motion for speedy disposition pursuant to § 15A-711.

¶ 10    On 22 October 2018, Defendant appeared with Mr. Wellman in Guilford County Superior Court before the Honorable Jerry Cash Martin, and made an oral motion to have Mr. Wellman removed "for cause." The trial court denied the motion to remove defense counsel for cause, but permitted Mr. Wellman to withdraw. Defendant then waived his right to the appointment of counsel, and the trial court allowed Defendant to proceed *pro se*, with Mr. Wellman serving as standby counsel.

¶ 11    On 13 November 2018, Defendant filed a *pro se* motion to dismiss the charges against him, alleging a violation of his constitutional right to a speedy trial. On 25 March 2019, Defendant filed another *pro se* motion to dismiss on the same basis.

¶ 12        The matter came on for trial at the 13 May 2019 criminal session of Guilford

County Superior Court, the Honorable Michael D. Duncan presiding. On 14 May

2019, the trial court heard Defendant's motion to dismiss on the ground that his Sixth

Amendment right to a speedy trial had been violated. Defendant argued that he had

been prejudiced by the delay because "a lot of the people that was ready to testify, it's

hard for us to get in contact with them now." In particular, Defendant explained that

he had intended to call his cousin, a truck driver, as an alibi witness, but "[i]t's hard

to get in touch with truck drivers[.]" Furthermore, he stated that he had not seen his

daughter since these allegations arose seven years prior.

¶ 13        The trial court made the following findings in open court regarding Defendant's

motion to dismiss for a speedy-trial violation:

> [The] Court does find that over a period of time,
> [Defendant] has had numerous attorneys that -- because of
> the attorneys -- each new attorney being appointed and
> having to be brought up to speed, that there has been delay
> in this matter. The Court does find that that delay has been
> primarily as a result of [D]efendant's request for new
> attorneys. That is not totally the reason for all the delays,
> but that is partially the reason for delays[.]
>
> . . . .
>
> [T]he Court does find that the Honorable Jerry Cash
> Martin signed an order back on October 22nd, 2018; that
> [D]efendant had previously been appointed Aaron
> Wellman; that present for the State, Assistant [District]
> Attorney Mr. Hubbard; that [D]efendant at that time made
> an oral motion to have Mr. Wellman removed; that after

hearing evidence, the Court in its discretion denied removing the attorney, but did allow Mr. Wellman to be discharged; that [D]efendant would be allowed to represent himself; that Mr. Wellman would remain as standby counsel.

Again, the Court finds that the lead officer investigator in this case had a serious health condition. For a period of time, she was unable to be present for court. The Court has listened carefully to the arguments of [Defendant], and [Defendant] has indicated that -- or he claims that he's been prejudiced by the fact of this taking so long to be tried that a lot of the witnesses, although they are still around; that one is a long-distance truck driver and they're hard to get up with; that other witnesses are hard to get up with. The Court didn't hear that any of them are not available or that he subpoenaed any of them and that they were unable to be served or anything of that nature.

The Court does find that without any evidence that the [D]efendant[ has] failed to show any prejudice in this matter as far as the length and delay. As a result, many of the continuances were based upon the fact that attorneys had to be appointed and given time to catch up to speed. The Court does note that it is [an] abnormal length of time from the date of the indictments and these cases till the date of this trial; however, based upon the totality of all the circumstances and the finding that the Court's made that there have been no prejudice, the Court is going to deny [D]efendant's motion to dismiss.

¶ 14   Defendant noted his objection for the record. Defendant then requested that the trial court appoint his standby counsel to represent him at trial. The trial court reappointed Mr. Wellman to serve as defense counsel.

¶ 15   On 17 May 2019, during jury deliberations, the trial court received a note from

the jury foreperson, stating:

> One of the jurors spoke to his mother during lunch.
>
> He said "he did not discuss the case" but he "did get her opinion."
>
> He did change his vote on count #2.
>
> He did say this openly.

(Capitalization omitted). "Nathan Mercado" was written above the phrase "one of the jurors."

¶ 16      Defendant moved for a mistrial based on juror misconduct. The trial court questioned Mr. Mercado regarding the alleged misconduct. Mr. Mercado indicated that his conversation with his mother did not influence his opinion:

> THE COURT: . . . First of all, first question will be who is it that you spoke to when it says "his mother"?
>
> JUROR MERCADO: My mother.
>
> THE COURT: Okay. . . . What I do want to know is whether or not the discussion with your mother in any way changed your ultimate decision in this case.
>
> JUROR MERCADO: No. I was talking about one of her old cases. That's what we kind of -- we neared off to when she went to High Point about one of her cases. It wasn't -- I just asked her how she carried herself when she was in there.
>
> THE COURT: Okay. . . . So let me ask this. Whatever conversation or discussion that you may have had with your own mother, did it in any way change the ultimate decision in your -- as how you voted in this case?
>
> JUROR MERCADO: No, sir.

THE COURT: Secondly, did you base your decision, whatever it may have been in this case, on anything other than the evidence that was presented here this week, the facts that were brought out in court that you find the facts to be, and the law as I've instructed you, have -- did you base your final decision on anything other than the evidence that was here in court and the law as I instructed you?

JUROR MERCADO: No. I was only using the evidence.

THE COURT: Okay. . . . One last question, Mr. Mercado. When you were indicating to the Court that you spoke with your mother because of cases -- case or cases she had had before, was that in regard to your mother serving on a jury?

JUROR MERCADO: Yes. In High Point.

THE COURT: Okay. . . . [I]n this note that I was given, it says you did not discuss the case with your mother. You've not discussed it . . . with your mother or anyone else? The facts . . . of this case or anything pertaining to this case?

JUROR MERCADO: No, sir.

¶ 17    The trial court denied Defendant's motion for a mistrial, ruling as follows:

[Juror Mercado] specifically indicated to the Court he based his decision on nothing except the evidence that's been presented in this case and the laws the Court had instructed him and on no other basis. He also indicated that whatever conversation he may have had, although it wasn't about this specific case, talking about his mother's past experiences did not in any way affect his overall decision in this case. Based upon those and other factors and in the Court's discretion, I am going to deny the motion for mistrial.

Defendant objected to the denial of the motion.

¶ 18        On 17 May 2019, the jury returned verdicts finding Defendant not guilty of first-degree sex offense of a child by an adult, but guilty of taking indecent liberties with a child. The trial court entered judgment upon the jury's guilty verdict and sentenced Defendant to 28 to 43 months' imprisonment. After a brief hearing, the trial court also ordered that Defendant register as a sex offender and enroll in satellite-based monitoring for the remainder of his natural life. Defendant gave oral notice of appeal from the judgment, and he subsequently petitioned this Court to issue its writ of certiorari to review the satellite-based monitoring order.

### *Discussion*

### *I. Speedy Trial*

¶ 19        Defendant first asserts that his constitutional right to a speedy trial was violated because of the seven-year delay between his arrest and trial. We disagree.

### *A. Standard of Review*

¶ 20        We review an alleged violation of a defendant's Sixth Amendment right to a speedy trial de novo. *State v. Wilkerson*, 257 N.C. App. 927, 929, 810 S.E.2d 389, 391 (2018). In reviewing the denial of a motion to dismiss for a speedy-trial violation, "[w]e review the superior court's order to determine whether the trial judge's underlying findings of fact are supported by competent evidence and whether those factual findings in turn support the judge's ultimate conclusions of law." *Id.* (citation and internal quotation marks omitted). In reviewing the conclusions of law, we

"consider the matter anew and substitute our judgment for that of the trial court." *State v. Johnson*, 251 N.C. App. 260, 265, 795 S.E.2d 126, 131 (2016) (citation omitted).

*B. Analysis*

¶ 21        "The Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sec. 18 of the North Carolina Constitution guarantee the right to a speedy trial." *State v. Bare*, 77 N.C. App. 516, 519, 335 S.E.2d 748, 750 (1985), *disc. review denied*, 315 N.C. 392, 338 S.E.2d 881 (1986). "The Supreme Court of the United States laid out a four-factor balancing test to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated." *Wilkerson*, 257 N.C. App. at 929, 810 S.E.2d at 392. "These factors are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *State v. Carvalho*, 243 N.C. App. 394, 400, 777 S.E.2d 78, 83 (2015) (internal quotation marks omitted) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117 (1972)), *disc. review improvidently allowed and aff'd per curiam*, 369 N.C. 309, 794 S.E.2d 497 (2016), *cert. denied*, ___ U.S. ___, 199 L. Ed. 2d 19 (2017).

¶ 22        To determine whether a violation has occurred, this Court is tasked with considering and weighing each factor:

> [N]one of the four factors identified above [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are

related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118–19 (footnote omitted). As such, we consider each factor and engage in this "difficult and sensitive balancing process" below. *Id.*

*i. Length of Delay*

For the purposes of this factor, we consider the length of the delay between formal accusation and trial. *Johnson*, 251 N.C. App. at 266, 795 S.E.2d at 131. "It is well established that a defendant's right to a speedy trial attaches upon being formally accused of criminal activity, by arrest or indictment." *State v. Pippin*, 72 N.C. App. 387, 391, 324 S.E.2d 900, 904, *disc. review denied*, 313 N.C. 609, 330 S.E.2d 615 (1985); *see also State v. Lee*, 218 N.C. App. 42, 52, 720 S.E.2d 884, 892 (considering delay between arrest and trial), *disc. review improvidently allowed*, 366 N.C. 329, 734 S.E.2d 571 (2012); *State v. Chaplin*, 122 N.C. App. 659, 664, 471 S.E.2d 653, 656 (1996) (same).

"[T]he length of the delay is not *per se* determinative of whether [the] defendant has been deprived of his right to a speedy trial." *State v. Spivey*, 357 N.C. 114, 119,

579 S.E.2d 251, 255 (2003); *see also Carvalho*, 243 N.C. App. at 401, 777 S.E.2d at 84. "No bright line exists to signify how much of a delay or wait is prejudicial, but as wait times approach a year, a presumption of prejudice arises." *Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392. "This presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Id.* (citation and internal quotation marks omitted). Once the length of a delay has triggered a *Barker* inquiry, "we do not determine the right to a speedy trial by the calendar alone. Rather, we must consider the length of the delay in relation to the three remaining factors." *Lee*, 218 N.C. App. at 52, 720 S.E.2d at 892 (citation and internal quotation marks omitted).

¶ 25 Here, approximately 83 months, or seven years, passed between Defendant's arrest and trial. This delay is undoubtedly sufficient to trigger a *Barker* analysis. *See id.* (finding 22-month delay "unusual" and sufficiently lengthy to trigger a *Barker* analysis); *Chaplin*, 122 N.C. App. at 664, 471 S.E.2d at 656 (determining that a nearly three-year delay triggered a *Barker* analysis). We therefore proceed to consider the remaining *Barker* factors.

*ii. Reason for Delay*

¶ 26 Generally, the defendant "bears the burden of showing the delay was the result of *neglect* or *willfulness* of the prosecution." *Wilkerson*, 257 N.C. App. at 930, 810

S.E.2d at 392 (citation and internal quotation marks omitted). However, a "particularly lengthy" delay "creates a prima facie showing that the delay was caused by the negligence of the prosecutor." *State v. Strickland*, 153 N.C. App. 581, 586, 570 S.E.2d 898, 902 (2002), *cert. denied*, 357 N.C. 65, 578 S.E.2d 594 (2003). An 83-month delay is undoubtedly sufficient to create this prima facie showing. *See id.* at 586, 570 S.E.2d at 903 (finding an approximately 31-month delay sufficient); *Chaplin*, 122 N.C. App. at 664, 471 S.E.2d at 656 (finding an approximately 35-month delay sufficient to create prima facie showing of negligence).

¶ 27    Upon a prima facie showing of prosecutorial neglect by a lengthy delay, "the burden shifts to the State to rebut and offer explanations for the delay." *Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392. Once the State offers a valid reason "for the lengthy delay of [the] defendant's trial, the burden of proof shifts back to the defendant to show neglect or willfulness by the prosecutor." *Strickland*, 153 N.C. App. at 586, 570 S.E.2d at 902.

¶ 28    Not all delays are viewed as neglectful or willful:

> The State is allowed good-faith delays which are reasonably necessary for the State to prepare and present its case, but is proscribed from purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort. Different reasons for delay are assigned different weights, but only valid reasons are weighed in favor of the State.

*Wilkerson*, 257 N.C. App. at 930–31, 810 S.E.2d at 393 (emphasis, citations, and

internal quotation marks omitted). A missing witness for the State is a "valid reason," which "serve[s] to justify appropriate delay." *Johnson*, 251 N.C. App. at 268, 795 S.E.2d at 132 (citation omitted). However, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government." *Id.* at 267, 795 S.E.2d at 132 (citation omitted).

¶ 29   On the other hand, we will not fault the State for any delays attributable to the defendant. Indeed, "a defendant who has caused or acquiesced in the delay will not be allowed to use it as a vehicle in which to escape justice." *Chaplin*, 122 N.C. App. at 663, 471 S.E.2d at 655 (citation and internal quotation marks omitted). For example, delay caused by defense counsel's "scheduling conflicts[,]" by a defendant's waiver of appointed counsel and failure to retain counsel, and by a defendant's motions to remove counsel and appoint new counsel will not be attributed to the State. *Johnson*, 251 N.C. App. at 267, 795 S.E.2d at 131; *see also State v. Grooms*, 353 N.C. 50, 62–63, 540 S.E.2d 713, 721 (2000) ("[T]he record shows numerous causes for the delay, including the appointment of substitute defense counsel[.]"), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001); *Lee*, 218 N.C. App. at 53, 720 S.E.2d at 892–93 (declining to attribute delay to the State where the defendant had "filed numerous complaints with the State Bar concerning his appointed counsel").

¶ 30   In the instant case, Defendant had four attorneys before waiving counsel, proceeding *pro se*, and then seeking to have standby counsel reappointed to represent

him at trial. Defendant received appointed counsel to replace his public defender at some point prior to 2015, again in September of 2015, and again in August of 2016. Between September 2015 and August 2016, Mr. Carpenter—Defendant's third attorney—represented Defendant on an unrelated matter, for which Defendant received a 46- to 66-year sentence in May 2016. *See State v. Spinks*, 256 N.C. App. 596, 808 S.E.2d 350 (2017), *disc. review denied*, 370 N.C. 696, 811 S.E.2d 589 (2018).

¶ 31        In August 2016, Mr. Carpenter moved to withdraw as Defendant's counsel. The trial court granted the motion and appointed Mr. Wellman to represent Defendant. The instant case was calendared for trial in February of 2017. However, Mr. Wellman moved for a continuance in February 2017 because he was not yet ready to try the case. The following spring of 2018, the State's lead investigator faced serious health challenges that impeded the State's ability to proceed to trial. In October 2018, Defendant then sought to have Mr. Wellman removed as his attorney and to represent himself. Defendant's case came on for trial seven months later.

¶ 32        The record therefore shows that the vast majority of the delay was attributable to Defendant's actions with respect to his counsel, or to a good-faith delay on the part of the State resulting from the serious illness of the lead investigator. There is no indication that the delay in trial of his case was attributable to any negligence or willfulness by the State. Therefore, despite the unusual delay between Defendant's arrest and trial, this factor weighs against Defendant.

*iii. Assertion of Right*

¶ 33     "A criminal defendant who vigorously asserts his right to a speedy trial will be considered in a more favorable light than a defendant who does not." *Strickland*, 153 N.C. App. at 587, 570 S.E.2d at 903. A failure to assert the right, or a failure to assert the right early in the process, weighs against a defendant's contention that his right has been violated. *Grooms*, 353 N.C. at 63, 540 S.E.2d at 722.

¶ 34     Here, despite being represented by counsel, Defendant filed three *pro se* motions asserting his right to a speedy trial: a motion for a speedy disposition in June 2016, a motion for speedy disposition in October 2016, and a motion for dismissal based on a violation of his right to a speedy trial in May 2017. These motions were filed "in violation of the rule that a defendant does not have the right to be represented by counsel and to also appear *pro se*." *Spivey*, 357 N.C. at 121, 579 S.E.2d at 256. After the Court permitted Mr. Wellman to withdraw and appointed him to represent Defendant as standby counsel, Defendant filed two *pro se* motions for speedy trial: one in November 2018 and one in March 2019. Defendant's case came on for trial in May 2019.

¶ 35     Even considering both the improper motions filed when Defendant was represented by counsel and his *pro se* motions, and "[a]ssuming *arguendo* that [D]efendant properly asserted his rights through his *pro se* motion[s], this assertion of the right, by itself, did not entitle him to relief." *Id.*

*iv. Prejudice*

The defendant has the burden of proving the fourth factor: that he was prejudiced by the delay. *State v. Hammonds*, 141 N.C. App. 152, 163, 541 S.E.2d 166, 175 (2000), *aff'd per curiam*, 354 N.C. 353, 554 S.E.2d 645 (2001), *cert. denied*, 536 U.S. 907, 153 L. Ed. 2d 184 (2002). "A defendant must show actual, substantial prejudice." *Spivey*, 357 N.C. at 122, 579 S.E.2d at 257. As our Supreme Court has explained,

> [t]he right to a speedy trial is designed: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*State v. Webster*, 337 N.C. 674, 680–81, 447 S.E.2d 349, 352 (1994) (emphasis and citation omitted) (quoting *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118).

Defendant asserts that the delay prejudiced him in two ways—he had not seen his daughter since he was arrested on these charges, and "it was hard to get in contact with the witnesses who were previously ready to testify"—specifically, his daughter and his cousin.

Defendant first cites *State v. Washington* in support of his argument that separation from his daughter "is a form of prejudice that we must consider." 192 N.C. App. 277, 292, 665 S.E.2d 799, 809 (2008). However, *Washington* is readily

distinguishable from the case at hand. In *Washington*, the day after police arrested the defendant, police found his ten-year-old son alone in the home. *Id.* The child was placed in the care of another, and the defendant was separated from his child for over a year. *Id.* Here, however, Defendant has not provided any support for his contention that his separation from his daughter was comparable to the separation in *Washington*, or that the separation was due to the pretrial delay at issue. Defendant has not suggested that his daughter was left unattended when he was arrested, or that he was unaware of her whereabouts during his incarceration. Further, unlike the defendant in *Washington*, Defendant was also incarcerated on other charges, for which he was convicted prior to trial in this case; the record shows that Defendant only received credit for two days spent in pretrial confinement. Thus, any inability to see his daughter prior to trial was not due to his pretrial incarceration on these charges.

¶ 39        Defendant also argues that the delay prejudiced his ability to present a defense because his witnesses were "hard to get up with." "If witnesses die or disappear during a delay, the prejudice is obvious." *Wilkerson*, 257 N.C. App. at 936, 810 S.E.2d at 396 (quoting *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118). While the unavailability of a witness weighs in favor of a determination of prejudice, *id.* at 935, 810 S.E.2d at 395, where witnesses "were either available or could have been located with diligent effort at the time the case was called for trial[,]" our Courts have ultimately concluded

that the defendant failed to meet his burden of establishing prejudice, *Spivey*, 357 N.C. at 122, 579 S.E.2d at 257.

¶ 40          Here, Defendant contends that his daughter and his cousin had previously been willing to testify, but that "it's hard for us to get in contact with them now." Defendant did not, however, indicate to the trial court why he could not get in contact with his daughter, or that she was actually unavailable at trial. Similarly, he did not argue that his cousin, a truck driver, was actually unavailable, merely that he was "hard to get up with." The trial court, therefore, correctly concluded that this factor did not weigh in Defendant's favor without evidence that his witnesses were actually unavailable, or that Defendant had attempted to subpoena them for trial. Defendant has failed to show "actual, substantial prejudice." *Id.* This factor therefore weighs against Defendant's claim.

*v. Weight of Factors*

¶ 41          No one factor is determinative of a speedy-trial violation; "they must all be weighed and considered together[.]" *Wilkerson*, 257 N.C. App. at 929, 810 S.E.2d at 392. Here, where Defendant awaited trial for seven years, but most of the delay was attributable to Defendant and not the State, and where Defendant has failed to establish that the delay prejudiced his defense, we conclude that the trial court properly denied Defendant's speedy-trial motion. *See Carvalho*, 243 N.C. App. at 401–03, 777 S.E.2d at 84–85 (concluding that there was no speedy-trial violation, despite

a pretrial delay of nearly nine years).

## *II. Motion for Mistrial*

Defendant next asserts that the trial court abused its discretion when it denied his motion for a mistrial due to alleged juror misconduct. We disagree.

### *A. Standard of Review*

"A mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." *State v. Warren,* 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990) (citations omitted). "The decision to grant or deny a mistrial rests within the sound discretion of the trial court." *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991). "An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Salentine*, 237 N.C. App. 76, 81, 763 S.E.2d 800, 804 (2014) (citation and internal quotation marks omitted), *disc. review denied*, 368 N.C. 256, 771 S.E.2d 308 (2015).

### *B. Analysis*

"When juror misconduct is alleged, it is the trial court's responsibility to make such investigations as may be appropriate, including examination of jurors when warranted, to determine whether misconduct has occurred and, if so, whether such conduct has resulted in prejudice to the defendant." *Id.* (citation and internal

quotation marks omitted). "Misconduct is determined by the facts and circumstances in each case, and this Court has held that not every violation of a trial court's instruction to jurors is such prejudicial misconduct as to require a mistrial." *Id.* (citations and internal quotation marks omitted). "The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct." *State v. Johnson*, 295 N.C. 227, 234, 244 S.E.2d 391, 396 (1978) (citation omitted). Because "[t]he trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings[,]" we accord great weight to the trial court's determinations regarding whether juror misconduct has occurred. *State v. Harris*, 145 N.C. App. 570, 576, 551 S.E.2d 499, 503 (2001) (citation omitted), *appeal dismissed and disc. review denied*, 355 N.C. 218, 560 S.E.2d 146 (2002).

¶ 45     In the case at bar, the trial court received a note from the jury foreperson stating that Juror Mercado "spoke to his mother during lunch. He said 'he did not discuss the case' but he 'did get her opinion.' He did change his vote on count #2. He did say this openly." (Capitalization omitted). The trial court then questioned Juror Mercado regarding the alleged misconduct. *See State v. Burke*, 343 N.C. 129, 149, 469 S.E.2d 901, 910 (noting that the trial court has the "discretion to determine the procedure and scope of the inquiry"), *cert. denied*, 519 U.S. 1013, 136 L. Ed. 2d 409

(1996). Juror Mercado informed the trial court that his conversation with his mother did not change his decision regarding the verdicts, that he based his decision only on the evidence presented at trial, and that he did not discuss the facts of the case with his mother or with anyone else. "[T]he trial court was ultimately satisfied that no prejudice resulted" from Juror Mercado's conversation with his mother. *Salentine*, 237 N.C. App. at 82, 763 S.E.2d at 805.

¶ 46    We therefore conclude that "[t]he trial court conducted a thorough inquiry into the circumstances in question and determined from the evidence before it that no juror had been improperly influenced. . . . [D]efendant has failed to show that the trial court abused its discretion by denying his . . . motion for a mistrial." *Bonney*, 329 N.C. at 74, 405 S.E.2d at 152.

### III. Satellite-Based Monitoring

#### A. Imposition of Lifetime Satellite-Based Monitoring

¶ 47    Defendant next contends that the trial court erred in imposing lifetime satellite-based monitoring. Defendant's satellite-based monitoring hearing was brief and uncontested:

> [PROSECUTOR]: And, Your Honor, as to the AOC-CR-615 form, he already has lifetime registration based on the conviction of rape. Nevertheless, I think we still need to make findings in this case. We would contend that Number 1 should be B, sexually violent offense; Number 2 should be he has not been classified as a sexually violent predator; Number 3 should be he is a recidivist as of this conviction;

Number 4, the offense of conviction is not an aggravated offense; Number 5, the offense, A, did involve the physical, mental, or sexual abuse of a minor as to registration. Number 1, since the recidivist finding is appropriate, would be A, which is registration for his natural life, and Number 2, again, would be B again upon a finding of being recidivist, natural life is the appropriate registration.

THE COURT: [Defense counsel], do you wish to be heard?

[DEFENSE COUNSEL]: Actually, perhaps [the prosecutor] will just let me take a look at what he had checked off. I -- everything he said sounds exactly right. I just want to -- I don't have that form on me. I'm sorry.

[PROSECUTOR]: All right.

(Pause.)

[DEFENSE COUNSEL]: No objection, Your Honor.

THE COURT: All right. The Court, in hearing from the attorneys -- and this is under AOC-CR-615 form, Judicial Findings and Order For Sex Offenders, Active Punishment, Court does find under Paragraph 1(b), that this was a sexually violent offense under North Carolina General Statutes 14-208.6(5) or an attempt; that under Paragraph 2, the defendant has not been classified as a sexually violent predator; Number 3, defendant is a recidivist under 14-208.6(2b); Paragraph Number 4, the offense of conviction is not an aggravated offense; Paragraph Number 5, that it is -- did involve the mental, physical, sexual abuse of a minor child.

Under the order for registration, Court does order Paragraph 1(a), that he's ordered upon release from imprisonment to register -- register as a sex offender for the rest of his natural life. Under satellite-based monitoring, 2(b), that upon his release of imprisonment, [D]efendant shall enroll in satellite-based monitoring for

> the rest of his natural life unless the monitoring is terminated pursuant to 14-208.43.
>
> That would be the order -- findings and the order with regard to AOC Form 615.
>
> [PROSECUTOR]: Thank you, Your Honor.
>
> [DEFENSE COUNSEL]: Your Honor, my client has instructed me to go ahead and enter a notice of appeal on the verdict, and we would request that the Appellate Defender be appointed.

¶ 48        As a preliminary matter, Defendant failed to properly appeal from the order imposing satellite-based monitoring. The satellite-based monitoring "statutes establish a civil regulatory regime[,]" *State v. Singleton*, 201 N.C. App. 620, 625, 689 S.E.2d 562, 565, *disc. review improvidently allowed*, 364 N.C. 418, 700 S.E.2d 226 (2010), and as such, a defendant seeking to appeal a satellite-based monitoring order must do so in accordance with Rule 3 of the North Carolina Rules of Appellate Procedure, which requires written notice of appeal. N.C.R. App. P. 3(a); *State v. Lopez*, 264 N.C. App. 496, 503–04, 826 S.E.2d 498, 503–04 (2019). Defendant did not file a written notice of appeal but has petitioned this Court to issue its writ of certiorari to review the satellite-based monitoring order.

¶ 49        A defendant's petition for writ of certiorari "must show merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959), *cert. denied*, 362 U.S. 917, 4 L. Ed. 2d 738 (1960). We conclude that Defendant has shown merit, and we allow Defendant's petition to review his claim.

¶ 50 Defendant contends that the trial court erred in imposing lifetime satellite-based monitoring because the State failed to meet its burden of proving that the imposition of lifetime satellite-based monitoring amounts to a reasonable search under the Fourth Amendment. Here, lifetime satellite-based monitoring was ordered without any argument or evidence regarding the reasonableness of the Fourth Amendment search effected by satellite-based monitoring.

¶ 51 At the hearing, however, Defendant made no argument, objection, or motion that satellite-based monitoring amounted to an unreasonable search. Accordingly, he requests that this Court exercise its discretion to invoke Rule 2 of the North Carolina Rules of Appellate Procedure to reach the merits of his argument. In that we will not ordinarily consider a constitutional question not raised before the trial court, *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982), "Defendant cannot prevail on this issue without [our] invoking Rule 2, because his constitutional argument was waived." *Spinks*, 256 N.C. App. at 611, 808 S.E.2d at 360.

¶ 52 "In our discretion, we decline to invoke Rule 2 . . . to review Defendant's unpreserved argument on direct appeal." *Id.*; *see also State v. Bishop*, 255 N.C. App. 767, 770, 805 S.E.2d 367, 370 (2017) (noting that because the defendant was "no different from other defendants who failed to preserve their constitutional arguments in the trial court, and because he has not argued any specific facts that demonstrate manifest injustice if we decline to invoke Rule 2, we do not believe this case is an

appropriate use of that extraordinary step"), *disc. review denied*, 370 N.C. 695, 811 S.E.2d 159 (2018).

*B. Ineffective Assistance of Counsel*

¶ 53        Defendant argues in the alternative that, if we decline to invoke Rule 2 to consider his appeal from the satellite-based monitoring order, we should conclude that he received ineffective assistance of counsel because his trial counsel failed to object to the imposition of lifetime satellite-based monitoring and failed to give proper written notice of appeal of the satellite-based monitoring order.

¶ 54        It is well settled that a constitutional claim of ineffective assistance of counsel is not available to defendants in this context because, as noted above, satellite-based monitoring proceedings are civil, not criminal, in nature. *State v. Wagoner*, 199 N.C. App. 321, 332, 683 S.E.2d 391, 400 (2009) (holding that ineffective assistance of counsel claims are not available in appeals from satellite-based monitoring proceedings), *aff'd per curiam*, 364 N.C. 422, 700 S.E.2d 222 (2010).

¶ 55        Defendant's argument that *Wagoner* "effectively overruled" prior precedent holding that ineffective assistance of counsel claims are available in appeals from satellite-based monitoring orders, and that we must instead follow the earlier precedent, is inapt. *See State v. Wooten*, 194 N.C. App. 524, 529–31, 669 S.E.2d 749, 752–53 (2008) (addressing merits of ineffective assistance of counsel claim from satellite-based monitoring order without considering whether the defendant was

entitled to bring such a claim), *disc. review denied*, *cert. dismissed*, 363 N.C. 138, 676 S.E.2d 308 (2009).

¶ 56        Our Court first addressed the underlying question—whether a constitutional ineffective assistance of counsel claim is available to defendants in appeals from satellite-based monitoring orders at all—in *Wagoner*. Therefore, we must follow *Wagoner* as binding precedent, and dismiss Defendant's constitutional ineffective assistance of counsel claim. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). We note, too, that our Supreme Court affirmed *Wagoner* in a per curiam opinion, further underscoring its status as binding precedent. *See State v. Davis*, 198 N.C. App. 443, 447, 680 S.E.2d 239, 243 (2009) (The Court of Appeals' "responsibility is to follow established precedent set forth by our Supreme Court." (citation omitted)).

¶ 57        Nevertheless, Defendant also raises a claim that he received ineffective assistance of counsel under his *statutory* right to counsel, stemming from N.C. Gen. Stat. § 7A-451(a)(18) (2019) (providing that "[a]n indigent person is entitled to services of counsel" in "[a] proceeding involving placement into satellite monitoring"). Defendant presents an issue of first impression in our Court.

¶ 58        "Under North Carolina law, indigent[ parties] are entitled to court-appointed

counsel whenever they are involved in adversarial proceedings that jeopardize their liberty interests." *State v. Cummings*, 346 N.C. 291, 317, 488 S.E.2d 550, 566 (1997) (citing N.C. Gen. Stat. § 7A-451 (1996)), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Indeed, our appellate courts have previously held that the statutory right to counsel includes the right to *effective* counsel. *See In re T.N.C.*, 375 N.C. 849, 854, 851 S.E.2d 29, 32 (2020) (termination of parental rights proceedings); *In re C.W.N., Jr.*, 227 N.C. App. 63, 65, 742 S.E.2d 583, 585 (2013) (juvenile delinquency proceedings); *In re Oghenekevebe*, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996) (termination of parental rights proceedings); *In re Bishop*, 92 N.C. App. 662, 664–65, 375 S.E.2d 676, 678 (1989) (same).

¶ 59        In *Bishop*, we explained the reasons that the statutory right to counsel includes the right to effective counsel, together with a remedy for the violation of that right:

> The parents' right to counsel in a proceeding to terminate parental rights is now guaranteed in all cases by statute. A parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one. By providing a statutory right to counsel in termination proceedings, our legislature has recognized that this interest must be safeguarded by adequate legal representation. If no remedy is provided for inadequate representation, the statutory right to counsel will become an "empty formality." Therefore, the right to counsel provided by [statute] includes the right to effective assistance of counsel.

92 N.C. App. at 664–65, 375 S.E.2d at 678 (citations omitted). Our Supreme Court

cited this analysis with approval in its recent decision in *T.N.C.*, adding that "[c]ounsel necessarily must provide effective assistance, as the alternative would render any statutory right to counsel potentially meaningless." 375 N.C. at 854, 851 S.E.2d at 32.

¶ 60      While our Courts have not extended this reasoning to counsel in satellite-based monitoring hearings, we see no reason—and the State makes no argument—that we should not consider Defendant's statutory ineffective assistance of counsel claim. Indeed, our Supreme Court has noted that the imposition of satellite-based monitoring "constitutes a substantial intrusion into [defendants' Fourth Amendment] interests[.]" *State v. Grady* ("*Grady III*"), 372 N.C. 509, 544–45, 831 S.E.2d 542, 568 (2019). Thus, in accordance with our opinion in *Bishop*, we conclude that

> [b]y providing a statutory right to counsel in [satellite-based monitoring] proceedings, our legislature has recognized that this interest must be safeguarded by adequate legal representation. If no remedy is provided for inadequate representation, the statutory right to counsel will become an "empty formality." Therefore, the right to counsel provided by [§ 7A-451(a)(18)] includes the right to effective assistance of counsel.

92 N.C. App. at 664–65, 375 S.E.2d at 678 (citations omitted).

¶ 61      We analyze statutory ineffective assistance of counsel claims under the two-prong standard established in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). *T.N.C.*, 375 N.C. at 854, 851 S.E.2d at 33. Therefore, to assert a statutory ineffective

assistance of counsel claim on appeal from the imposition of satellite-based monitoring, a defendant must show "that counsel's performance was deficient and that this deficiency was so serious as to deprive the party of a fair hearing." *Id.* at 856, 851 S.E.2d at 34 (2020). In determining whether counsel's performance was deficient, we accord great deference to matters of strategy, *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73 (2002), and we "evaluate the conduct from counsel's perspective at the time[,]" *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694 (1984)). To demonstrate prejudice, the defendant must establish "a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 248.

¶ 62    In the instant case, defense counsel did not object to the imposition of satellite-based monitoring, raise a constitutional argument regarding the imposition of satellite-based monitoring, or file written notice of appeal from the satellite-based monitoring order. We can discern no strategic reason for counsel to decline to object to or offer a constitutional argument regarding the imposition of satellite-based monitoring in this case. Prior to Defendant's satellite-based monitoring hearing, our Court's precedent had already established that, in satellite-based monitoring proceedings, the State bears the burden of establishing that the imposition of

satellite-based monitoring constitutes a reasonable search under the Fourth Amendment, and that the trial court must consider the totality of the circumstances before imposing satellite-based monitoring. *State v. Morris*, 246 N.C. App. 349, 352, 783 S.E.2d 528, 530 (2016); *State v. Blue*, 246 N.C. App. 259, 265, 783 S.E.2d 524, 527 (2016). Nor can we see a strategic reason for counsel to fail to properly file notice of appeal from the order.

¶ 63    Moreover, it is evident that counsel's deficient performance prejudiced Defendant. A trial court errs where it orders lifetime satellite-based monitoring without evidence that the enrollment constitutes a reasonable Fourth Amendment search. *Blue*, 246 N.C. App. at 265, 783 S.E.2d at 527.

¶ 64    In the instant case, had counsel lodged an objection regarding the reasonableness of satellite-based monitoring or appealed from the order imposing lifetime satellite-based monitoring, it is reasonably probable that the result of the proceeding would have been different. *See Braswell*, 312 N.C. at 563, 324 S.E.2d at 248; *see also State v. Tucker*, 266 N.C. App. 588, 589, 832 S.E.2d 258, 259 ("Simply put, after [*State v.*] *Griffin*, trial courts cannot impose satellite-based monitoring unless the State presents actual evidence—such as 'empirical or statistical reports'—establishing that lifetime satellite-based monitoring prevents recidivism."), *remanded for reconsideration in light of Grady III*, 373 N.C. 251, 835 S.E.2d 442 (2019), *on remand at* ___ N.C. App. ___, 843 S.E.2d 486, 2020 N.C. App. LEXIS 491

(2020) (unpublished); *Spinks*, 256 N.C. App. at 610, 808 S.E.2d at 360 (noting that "[u]nder our precedents, if [the d]efendant had challenged the constitutionality of the [satellite-based monitoring] as applied to him, we would have been required to reverse the court's order of [satellite-based monitoring]" where the State offered no evidence and the trial court made no findings regarding the reasonableness of satellite-based monitoring).

¶ 65        Accordingly, we conclude that Defendant received statutory ineffective assistance of counsel with regard to the satellite-based monitoring hearing. We therefore reverse the satellite-based monitoring order and remand with instructions for the trial court to conduct a hearing on the reasonableness of the imposition of satellite-based monitoring.

## *Conclusion*

¶ 66        For the foregoing reasons, we conclude that the trial court properly denied Defendant's motion to dismiss for an alleged speedy-trial violation, and that the trial court properly denied Defendant's motion for a mistrial. We therefore hold that Defendant received a fair trial, free from error.

¶ 67        However, because we hold that Defendant received ineffective assistance of counsel at the satellite-based monitoring hearing, we reverse the satellite-based monitoring order and remand for a hearing at which the trial court shall determine whether the imposition of satellite-based monitoring is reasonable as applied to

Defendant.

NO ERROR IN PART; REVERSED IN PART AND REMANDED.

Judges DILLON and COLLINS concur.