IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-218

 No. COA20-541

 Filed 18 May 2021

 Guilford County, No. 12 CRS 81577

 STATE OF NORTH CAROLINA

 v.

 DARIS LAMONT SPINKS

 Appeal by defendant from judgment and order entered 17 May 2019 by Judge

 Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals

 24 March 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Scott T.
 Slusser, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace
 Washington, for defendant-appellant.

 ZACHARY, Judge.

¶1 Defendant Daris Lamont Spinks appeals from a judgment entered upon a

 jury’s verdict finding him guilty of taking indecent liberties with a child, and from an

 order imposing lifetime satellite-based monitoring. After careful review, we hold that

 Defendant received a fair trial, free from error. However, because we conclude that

 Defendant received ineffective assistance of counsel at the satellite-based monitoring

 hearing, we reverse the order and remand for a new hearing on the State’s application
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 for lifetime satellite-based monitoring.

 Background

 Factual Background

¶2 In April of 2011, six-year-old K.S.1 attended a sleepover birthday party for her

 best friend Keasia along with several other children, including Defendant’s daughter

 Tootie. The party was held at the home of Keasia’s mother, Defendant’s half-sister.

 K.S. met Defendant at the party; he told her to call him “Uncle Lamont.” At some

 point, Tootie was injured on the trampoline, and Defendant took her to his

 grandmother’s house, where Defendant resided. Tootie’s mother picked up Tootie

 there, and Defendant went to a nightclub with his cousin. Defendant returned to

 Keasia’s home later that night.

¶3 After the children jumped on a trampoline in the front yard, Keasia and K.S.

 went inside and watched television in Keasia’s bedroom. Eventually, the two girls fell

 asleep in Keasia’s bed. K.S. awoke when she heard someone enter the room.

 Defendant began touching K.S.’s back. Defendant then pulled down K.S.’s pants,

 “pulled his private part out and put it in [K.S.’s] behind.” Defendant stopped after

 approximately ten minutes and left the room. Keasia was in the bed with K.S. during

 the encounter.

 1 We refer to the child victim by the initials used by the parties in order to protect her

 identity.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

¶4 The next morning, K.S. and Keasia told Keasia’s mother that Defendant had

 raped K.S., but no one told K.S.’s mother. One year later, in March of 2012, K.S. told

 her mother and her aunt that Defendant had raped her.

¶5 On 25 June 2012, Defendant was arrested.

 Procedural History

¶6 On 1 April 2013, a Guilford County grand jury returned indictments charging

 Defendant with first-degree sex offense of a child by an adult and taking indecent

 liberties with a child. Defendant was first represented by public defender Wayne

 Baucino. Upon his withdrawal, the trial court appointed attorney Joe Floyd to

 represent Defendant. Mr. Floyd represented Defendant for approximately three

 years, at which point Defendant sought to discharge him. On 15 September 2015, the

 trial court appointed attorney Alec Carpenter to represent Defendant.

¶7 On 22 August 2016, Mr. Carpenter moved to withdraw as Defendant’s counsel.

 The trial court granted the motion and appointed attorney Aaron Wellman to

 represent Defendant.

¶8 Despite being represented by counsel, on 13 October 2016, Defendant filed a

 pro se motion for speedy disposition pursuant to N.C. Gen. Stat. § 15A-711.

 Defendant’s case was thereafter calendared for trial for the week of 13 February 2017.

 However, on 1 February 2017, Defendant moved to continue trial of this matter,

 which the trial court granted. At the same hearing, the trial court also denied
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 Defendant’s 13 October 2016 motion for speedy disposition, concluding that the State

 had complied with its obligations pursuant to N.C. Gen. Stat. § 15A-711 by

 calendaring the matter for trial for 13 February 2017. The court further concluded

 that “all days from February 13th, 2017 through such date that Defendant, through

 Attorney Wellman, and the State . . . designate as an agreed-upon trial date shall not

 count against the six month period in which the State was required to proceed upon

 the filing of Defendant’s motion dated October 13th, 2016.”

¶9 While still represented by Mr. Wellman, on 1 May 2017, Defendant filed

 another pro se motion and request for dismissal, alleging a violation of his right to a

 speedy trial on the grounds that more than six months had elapsed since the filing of

 Defendant’s motion for speedy disposition pursuant to § 15A-711.

¶ 10 On 22 October 2018, Defendant appeared with Mr. Wellman in Guilford

 County Superior Court before the Honorable Jerry Cash Martin, and made an oral

 motion to have Mr. Wellman removed “for cause.” The trial court denied the motion

 to remove defense counsel for cause, but permitted Mr. Wellman to withdraw.

 Defendant then waived his right to the appointment of counsel, and the trial court

 allowed Defendant to proceed pro se, with Mr. Wellman serving as standby counsel.

¶ 11 On 13 November 2018, Defendant filed a pro se motion to dismiss the charges

 against him, alleging a violation of his constitutional right to a speedy trial. On 25

 March 2019, Defendant filed another pro se motion to dismiss on the same basis.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

¶ 12 The matter came on for trial at the 13 May 2019 criminal session of Guilford

 County Superior Court, the Honorable Michael D. Duncan presiding. On 14 May

 2019, the trial court heard Defendant’s motion to dismiss on the ground that his Sixth

 Amendment right to a speedy trial had been violated. Defendant argued that he had

 been prejudiced by the delay because “a lot of the people that was ready to testify, it’s

 hard for us to get in contact with them now.” In particular, Defendant explained that

 he had intended to call his cousin, a truck driver, as an alibi witness, but “[i]t’s hard

 to get in touch with truck drivers[.]” Furthermore, he stated that he had not seen his

 daughter since these allegations arose seven years prior.

¶ 13 The trial court made the following findings in open court regarding Defendant’s

 motion to dismiss for a speedy-trial violation:

 [The] Court does find that over a period of time,
 [Defendant] has had numerous attorneys that -- because of
 the attorneys -- each new attorney being appointed and
 having to be brought up to speed, that there has been delay
 in this matter. The Court does find that that delay has been
 primarily as a result of [D]efendant’s request for new
 attorneys. That is not totally the reason for all the delays,
 but that is partially the reason for delays[.]

 ....

 [T]he Court does find that the Honorable Jerry Cash
 Martin signed an order back on October 22nd, 2018; that
 [D]efendant had previously been appointed Aaron
 Wellman; that present for the State, Assistant [District]
 Attorney Mr. Hubbard; that [D]efendant at that time made
 an oral motion to have Mr. Wellman removed; that after
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 hearing evidence, the Court in its discretion denied
 removing the attorney, but did allow Mr. Wellman to be
 discharged; that [D]efendant would be allowed to represent
 himself; that Mr. Wellman would remain as standby
 counsel.

 Again, the Court finds that the lead officer
 investigator in this case had a serious health condition. For
 a period of time, she was unable to be present for court. The
 Court has listened carefully to the arguments of
 [Defendant], and [Defendant] has indicated that -- or he
 claims that he’s been prejudiced by the fact of this taking
 so long to be tried that a lot of the witnesses, although they
 are still around; that one is a long-distance truck driver
 and they’re hard to get up with; that other witnesses are
 hard to get up with. The Court didn’t hear that any of them
 are not available or that he subpoenaed any of them and
 that they were unable to be served or anything of that
 nature.

 The Court does find that without any evidence that
 the [D]efendant[ has] failed to show any prejudice in this
 matter as far as the length and delay. As a result, many of
 the continuances were based upon the fact that attorneys
 had to be appointed and given time to catch up to speed.
 The Court does note that it is [an] abnormal length of time
 from the date of the indictments and these cases till the
 date of this trial; however, based upon the totality of all the
 circumstances and the finding that the Court’s made that
 there have been no prejudice, the Court is going to deny
 [D]efendant’s motion to dismiss.

¶ 14 Defendant noted his objection for the record. Defendant then requested that

 the trial court appoint his standby counsel to represent him at trial. The trial court

 reappointed Mr. Wellman to serve as defense counsel.

¶ 15 On 17 May 2019, during jury deliberations, the trial court received a note from
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 the jury foreperson, stating:

 One of the jurors spoke to his mother during lunch.

 He said “he did not discuss the case” but he “did get her
 opinion.”

 He did change his vote on count #2.

 He did say this openly.

 (Capitalization omitted). “Nathan Mercado” was written above the phrase “one of the

 jurors.”

¶ 16 Defendant moved for a mistrial based on juror misconduct. The trial court

 questioned Mr. Mercado regarding the alleged misconduct. Mr. Mercado indicated

 that his conversation with his mother did not influence his opinion:

 THE COURT: . . . First of all, first question will be who is
 it that you spoke to when it says “his mother”?

 JUROR MERCADO: My mother.

 THE COURT: Okay. . . . What I do want to know is whether
 or not the discussion with your mother in any way changed
 your ultimate decision in this case.

 JUROR MERCADO: No. I was talking about one of her old
 cases. That’s what we kind of -- we neared off to when she
 went to High Point about one of her cases. It wasn’t -- I just
 asked her how she carried herself when she was in there.

 THE COURT: Okay. . . . So let me ask this. Whatever
 conversation or discussion that you may have had with
 your own mother, did it in any way change the ultimate
 decision in your -- as how you voted in this case?

 JUROR MERCADO: No, sir.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 THE COURT: Secondly, did you base your decision,
 whatever it may have been in this case, on anything other
 than the evidence that was presented here this week, the
 facts that were brought out in court that you find the facts
 to be, and the law as I’ve instructed you, have -- did you
 base your final decision on anything other than the
 evidence that was here in court and the law as I instructed
 you?

 JUROR MERCADO: No. I was only using the evidence.

 THE COURT: Okay. . . . One last question, Mr. Mercado.
 When you were indicating to the Court that you spoke with
 your mother because of cases -- case or cases she had had
 before, was that in regard to your mother serving on a jury?

 JUROR MERCADO: Yes. In High Point.

 THE COURT: Okay. . . . [I]n this note that I was given, it
 says you did not discuss the case with your mother. You’ve
 not discussed it . . . with your mother or anyone else? The
 facts . . . of this case or anything pertaining to this case?

 JUROR MERCADO: No, sir.

¶ 17 The trial court denied Defendant’s motion for a mistrial, ruling as follows:

 [Juror Mercado] specifically indicated to the Court he
 based his decision on nothing except the evidence that’s
 been presented in this case and the laws the Court had
 instructed him and on no other basis. He also indicated
 that whatever conversation he may have had, although it
 wasn’t about this specific case, talking about his mother’s
 past experiences did not in any way affect his overall
 decision in this case. Based upon those and other factors
 and in the Court’s discretion, I am going to deny the motion
 for mistrial.

 Defendant objected to the denial of the motion.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

¶ 18 On 17 May 2019, the jury returned verdicts finding Defendant not guilty of

 first-degree sex offense of a child by an adult, but guilty of taking indecent liberties

 with a child. The trial court entered judgment upon the jury’s guilty verdict and

 sentenced Defendant to 28 to 43 months’ imprisonment. After a brief hearing, the

 trial court also ordered that Defendant register as a sex offender and enroll in

 satellite-based monitoring for the remainder of his natural life. Defendant gave oral

 notice of appeal from the judgment, and he subsequently petitioned this Court to

 issue its writ of certiorari to review the satellite-based monitoring order.

 Discussion

 I. Speedy Trial

¶ 19 Defendant first asserts that his constitutional right to a speedy trial was

 violated because of the seven-year delay between his arrest and trial. We disagree.

 A. Standard of Review

¶ 20 We review an alleged violation of a defendant’s Sixth Amendment right to a

 speedy trial de novo. State v. Wilkerson, 257 N.C. App. 927, 929, 810 S.E.2d 389, 391

 (2018). In reviewing the denial of a motion to dismiss for a speedy-trial violation,

 “[w]e review the superior court’s order to determine whether the trial judge’s

 underlying findings of fact are supported by competent evidence and whether those

 factual findings in turn support the judge’s ultimate conclusions of law.” Id. (citation

 and internal quotation marks omitted). In reviewing the conclusions of law, we
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 “consider the matter anew and substitute our judgment for that of the trial court.”

 State v. Johnson, 251 N.C. App. 260, 265, 795 S.E.2d 126, 131 (2016) (citation

 omitted).

 B. Analysis

¶ 21 “The Sixth and Fourteenth Amendments to the United States Constitution and

 Article I, Sec. 18 of the North Carolina Constitution guarantee the right to a speedy

 trial.” State v. Bare, 77 N.C. App. 516, 519, 335 S.E.2d 748, 750 (1985), disc. review

 denied, 315 N.C. 392, 338 S.E.2d 881 (1986). “The Supreme Court of the United States

 laid out a four-factor balancing test to determine whether a defendant’s Sixth

 Amendment right to a speedy trial has been violated.” Wilkerson, 257 N.C. App. at

 929, 810 S.E.2d at 392. “These factors are: (1) the length of delay; (2) the reason for

 the delay; (3) the defendant’s assertion of his right; and (4) prejudice to the

 defendant.” State v. Carvalho, 243 N.C. App. 394, 400, 777 S.E.2d 78, 83 (2015)

 (internal quotation marks omitted) (quoting Barker v. Wingo, 407 U.S. 514, 530, 33

 L. Ed. 2d 101, 117 (1972)), disc. review improvidently allowed and aff’d per curiam,

 369 N.C. 309, 794 S.E.2d 497 (2016), cert. denied, ___ U.S. ___, 199 L. Ed. 2d 19 (2017).

¶ 22 To determine whether a violation has occurred, this Court is tasked with

 considering and weighing each factor:

 [N]one of the four factors identified above [is] either a
 necessary or sufficient condition to the finding of a
 deprivation of the right of speedy trial. Rather, they are
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 related factors and must be considered together with such
 other circumstances as may be relevant. In sum, these
 factors have no talismanic qualities; courts must still
 engage in a difficult and sensitive balancing process. But,
 because we are dealing with a fundamental right of the
 accused, this process must be carried out with full
 recognition that the accused’s interest in a speedy trial is
 specifically affirmed in the Constitution.

 Barker, 407 U.S. at 533, 33 L. Ed. 2d at 118–19 (footnote omitted). As such, we

 consider each factor and engage in this “difficult and sensitive balancing process”

 below. Id.

 i. Length of Delay

¶ 23 For the purposes of this factor, we consider the length of the delay between

 formal accusation and trial. Johnson, 251 N.C. App. at 266, 795 S.E.2d at 131. “It is

 well established that a defendant’s right to a speedy trial attaches upon being

 formally accused of criminal activity, by arrest or indictment.” State v. Pippin, 72

 N.C. App. 387, 391, 324 S.E.2d 900, 904, disc. review denied, 313 N.C. 609, 330 S.E.2d

 615 (1985); see also State v. Lee, 218 N.C. App. 42, 52, 720 S.E.2d 884, 892

 (considering delay between arrest and trial), disc. review improvidently allowed, 366

 N.C. 329, 734 S.E.2d 571 (2012); State v. Chaplin, 122 N.C. App. 659, 664, 471 S.E.2d

 653, 656 (1996) (same).

¶ 24 “[T]he length of the delay is not per se determinative of whether [the] defendant

 has been deprived of his right to a speedy trial.” State v. Spivey, 357 N.C. 114, 119,
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 579 S.E.2d 251, 255 (2003); see also Carvalho, 243 N.C. App. at 401, 777 S.E.2d at 84.

 “No bright line exists to signify how much of a delay or wait is prejudicial, but as wait

 times approach a year, a presumption of prejudice arises.” Wilkerson, 257 N.C. App.

 at 930, 810 S.E.2d at 392. “This presumptive prejudice does not necessarily indicate

 a statistical probability of prejudice; it simply marks the point at which courts deem

 the delay unreasonable enough to trigger the Barker inquiry.” Id. (citation and

 internal quotation marks omitted). Once the length of a delay has triggered a Barker

 inquiry, “we do not determine the right to a speedy trial by the calendar alone.

 Rather, we must consider the length of the delay in relation to the three remaining

 factors.” Lee, 218 N.C. App. at 52, 720 S.E.2d at 892 (citation and internal quotation

 marks omitted).

¶ 25 Here, approximately 83 months, or seven years, passed between Defendant’s

 arrest and trial. This delay is undoubtedly sufficient to trigger a Barker analysis. See

 id. (finding 22-month delay “unusual” and sufficiently lengthy to trigger a Barker

 analysis); Chaplin, 122 N.C. App. at 664, 471 S.E.2d at 656 (determining that a nearly

 three-year delay triggered a Barker analysis). We therefore proceed to consider the

 remaining Barker factors.

 ii. Reason for Delay

¶ 26 Generally, the defendant “bears the burden of showing the delay was the result

 of neglect or willfulness of the prosecution.” Wilkerson, 257 N.C. App. at 930, 810
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 S.E.2d at 392 (citation and internal quotation marks omitted). However, a

 “particularly lengthy” delay “creates a prima facie showing that the delay was caused

 by the negligence of the prosecutor.” State v. Strickland, 153 N.C. App. 581, 586, 570

 S.E.2d 898, 902 (2002), cert. denied, 357 N.C. 65, 578 S.E.2d 594 (2003). An 83-month

 delay is undoubtedly sufficient to create this prima facie showing. See id. at 586, 570

 S.E.2d at 903 (finding an approximately 31-month delay sufficient); Chaplin, 122

 N.C. App. at 664, 471 S.E.2d at 656 (finding an approximately 35-month delay

 sufficient to create prima facie showing of negligence).

¶ 27 Upon a prima facie showing of prosecutorial neglect by a lengthy delay, “the

 burden shifts to the State to rebut and offer explanations for the delay.” Wilkerson,

 257 N.C. App. at 930, 810 S.E.2d at 392. Once the State offers a valid reason “for the

 lengthy delay of [the] defendant’s trial, the burden of proof shifts back to the

 defendant to show neglect or willfulness by the prosecutor.” Strickland, 153 N.C. App.

 at 586, 570 S.E.2d at 902.

¶ 28 Not all delays are viewed as neglectful or willful:

 The State is allowed good-faith delays which are
 reasonably necessary for the State to prepare and present
 its case, but is proscribed from purposeful or oppressive
 delays and those which the prosecution could have avoided
 by reasonable effort. Different reasons for delay are
 assigned different weights, but only valid reasons are
 weighed in favor of the State.

 Wilkerson, 257 N.C. App. at 930–31, 810 S.E.2d at 393 (emphasis, citations, and
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 internal quotation marks omitted). A missing witness for the State is a “valid reason,”

 which “serve[s] to justify appropriate delay.” Johnson, 251 N.C. App. at 268, 795

 S.E.2d at 132 (citation omitted). However, “[a] deliberate attempt to delay the trial in

 order to hamper the defense should be weighed heavily against the government.” Id.

 at 267, 795 S.E.2d at 132 (citation omitted).

¶ 29 On the other hand, we will not fault the State for any delays attributable to

 the defendant. Indeed, “a defendant who has caused or acquiesced in the delay will

 not be allowed to use it as a vehicle in which to escape justice.” Chaplin, 122 N.C.

 App. at 663, 471 S.E.2d at 655 (citation and internal quotation marks omitted). For

 example, delay caused by defense counsel’s “scheduling conflicts[,]” by a defendant’s

 waiver of appointed counsel and failure to retain counsel, and by a defendant’s

 motions to remove counsel and appoint new counsel will not be attributed to the

 State. Johnson, 251 N.C. App. at 267, 795 S.E.2d at 131; see also State v. Grooms, 353

 N.C. 50, 62–63, 540 S.E.2d 713, 721 (2000) (“[T]he record shows numerous causes for

 the delay, including the appointment of substitute defense counsel[.]”), cert. denied,

 534 U.S. 838, 151 L. Ed. 2d 54 (2001); Lee, 218 N.C. App. at 53, 720 S.E.2d at 892–93

 (declining to attribute delay to the State where the defendant had “filed numerous

 complaints with the State Bar concerning his appointed counsel”).

¶ 30 In the instant case, Defendant had four attorneys before waiving counsel,

 proceeding pro se, and then seeking to have standby counsel reappointed to represent
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 him at trial. Defendant received appointed counsel to replace his public defender at

 some point prior to 2015, again in September of 2015, and again in August of 2016.

 Between September 2015 and August 2016, Mr. Carpenter—Defendant’s third

 attorney—represented Defendant on an unrelated matter, for which Defendant

 received a 46- to 66-year sentence in May 2016. See State v. Spinks, 256 N.C. App.

 596, 808 S.E.2d 350 (2017), disc. review denied, 370 N.C. 696, 811 S.E.2d 589 (2018).

¶ 31 In August 2016, Mr. Carpenter moved to withdraw as Defendant’s counsel. The

 trial court granted the motion and appointed Mr. Wellman to represent Defendant.

 The instant case was calendared for trial in February of 2017. However, Mr. Wellman

 moved for a continuance in February 2017 because he was not yet ready to try the

 case. The following spring of 2018, the State’s lead investigator faced serious health

 challenges that impeded the State’s ability to proceed to trial. In October 2018,

 Defendant then sought to have Mr. Wellman removed as his attorney and to

 represent himself. Defendant’s case came on for trial seven months later.

¶ 32 The record therefore shows that the vast majority of the delay was attributable

 to Defendant’s actions with respect to his counsel, or to a good-faith delay on the part

 of the State resulting from the serious illness of the lead investigator. There is no

 indication that the delay in trial of his case was attributable to any negligence or

 willfulness by the State. Therefore, despite the unusual delay between Defendant’s

 arrest and trial, this factor weighs against Defendant.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 iii. Assertion of Right

¶ 33 “A criminal defendant who vigorously asserts his right to a speedy trial will be

 considered in a more favorable light than a defendant who does not.” Strickland, 153

 N.C. App. at 587, 570 S.E.2d at 903. A failure to assert the right, or a failure to assert

 the right early in the process, weighs against a defendant’s contention that his right

 has been violated. Grooms, 353 N.C. at 63, 540 S.E.2d at 722.

¶ 34 Here, despite being represented by counsel, Defendant filed three pro se

 motions asserting his right to a speedy trial: a motion for a speedy disposition in June

 2016, a motion for speedy disposition in October 2016, and a motion for dismissal

 based on a violation of his right to a speedy trial in May 2017. These motions were

 filed “in violation of the rule that a defendant does not have the right to be

 represented by counsel and to also appear pro se.” Spivey, 357 N.C. at 121, 579 S.E.2d

 at 256. After the Court permitted Mr. Wellman to withdraw and appointed him to

 represent Defendant as standby counsel, Defendant filed two pro se motions for

 speedy trial: one in November 2018 and one in March 2019. Defendant’s case came

 on for trial in May 2019.

¶ 35 Even considering both the improper motions filed when Defendant was

 represented by counsel and his pro se motions, and “[a]ssuming arguendo that

 [D]efendant properly asserted his rights through his pro se motion[s], this assertion

 of the right, by itself, did not entitle him to relief.” Id.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 iv. Prejudice

¶ 36 The defendant has the burden of proving the fourth factor: that he was

 prejudiced by the delay. State v. Hammonds, 141 N.C. App. 152, 163, 541 S.E.2d 166,

 175 (2000), aff’d per curiam, 354 N.C. 353, 554 S.E.2d 645 (2001), cert. denied, 536

 U.S. 907, 153 L. Ed. 2d 184 (2002). “A defendant must show actual, substantial

 prejudice.” Spivey, 357 N.C. at 122, 579 S.E.2d at 257. As our Supreme Court has

 explained,

 [t]he right to a speedy trial is designed: (i) to prevent
 oppressive pretrial incarceration; (ii) to minimize anxiety
 and concern of the accused; and (iii) to limit the possibility
 that the defense will be impaired. Of these, the most
 serious is the last, because the inability of a defendant
 adequately to prepare his case skews the fairness of the
 entire system.

 State v. Webster, 337 N.C. 674, 680–81, 447 S.E.2d 349, 352 (1994) (emphasis and

 citation omitted) (quoting Barker, 407 U.S. at 532, 33 L. Ed. 2d at 118).

¶ 37 Defendant asserts that the delay prejudiced him in two ways—he had not seen

 his daughter since he was arrested on these charges, and “it was hard to get in contact

 with the witnesses who were previously ready to testify”—specifically, his daughter

 and his cousin.

¶ 38 Defendant first cites State v. Washington in support of his argument that

 separation from his daughter “is a form of prejudice that we must consider.” 192 N.C.

 App. 277, 292, 665 S.E.2d 799, 809 (2008). However, Washington is readily
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 distinguishable from the case at hand. In Washington, the day after police arrested

 the defendant, police found his ten-year-old son alone in the home. Id. The child was

 placed in the care of another, and the defendant was separated from his child for over

 a year. Id. Here, however, Defendant has not provided any support for his contention

 that his separation from his daughter was comparable to the separation in

 Washington, or that the separation was due to the pretrial delay at issue. Defendant

 has not suggested that his daughter was left unattended when he was arrested, or

 that he was unaware of her whereabouts during his incarceration. Further, unlike

 the defendant in Washington, Defendant was also incarcerated on other charges, for

 which he was convicted prior to trial in this case; the record shows that Defendant

 only received credit for two days spent in pretrial confinement. Thus, any inability to

 see his daughter prior to trial was not due to his pretrial incarceration on these

 charges.

¶ 39 Defendant also argues that the delay prejudiced his ability to present a defense

 because his witnesses were “hard to get up with.” “If witnesses die or disappear

 during a delay, the prejudice is obvious.” Wilkerson, 257 N.C. App. at 936, 810 S.E.2d

 at 396 (quoting Barker, 407 U.S. at 532, 33 L. Ed. 2d at 118). While the unavailability

 of a witness weighs in favor of a determination of prejudice, id. at 935, 810 S.E.2d at

 395, where witnesses “were either available or could have been located with diligent

 effort at the time the case was called for trial[,]” our Courts have ultimately concluded
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 that the defendant failed to meet his burden of establishing prejudice, Spivey, 357

 N.C. at 122, 579 S.E.2d at 257.

¶ 40 Here, Defendant contends that his daughter and his cousin had previously

 been willing to testify, but that “it’s hard for us to get in contact with them now.”

 Defendant did not, however, indicate to the trial court why he could not get in contact

 with his daughter, or that she was actually unavailable at trial. Similarly, he did not

 argue that his cousin, a truck driver, was actually unavailable, merely that he was

 “hard to get up with.” The trial court, therefore, correctly concluded that this factor

 did not weigh in Defendant’s favor without evidence that his witnesses were actually

 unavailable, or that Defendant had attempted to subpoena them for trial. Defendant

 has failed to show “actual, substantial prejudice.” Id. This factor therefore weighs

 against Defendant’s claim.

 v. Weight of Factors

¶ 41 No one factor is determinative of a speedy-trial violation; “they must all be

 weighed and considered together[.]” Wilkerson, 257 N.C. App. at 929, 810 S.E.2d at

 392. Here, where Defendant awaited trial for seven years, but most of the delay was

 attributable to Defendant and not the State, and where Defendant has failed to

 establish that the delay prejudiced his defense, we conclude that the trial court

 properly denied Defendant’s speedy-trial motion. See Carvalho, 243 N.C. App. at 401–

 03, 777 S.E.2d at 84–85 (concluding that there was no speedy-trial violation, despite
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 a pretrial delay of nearly nine years).

 II. Motion for Mistrial

¶ 42 Defendant next asserts that the trial court abused its discretion when it denied

 his motion for a mistrial due to alleged juror misconduct. We disagree.

 A. Standard of Review

¶ 43 “A mistrial should be granted only when there are improprieties in the trial so

 serious that they substantially and irreparably prejudice the defendant’s case and

 make it impossible for the defendant to receive a fair and impartial verdict.” State v.

 Warren, 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990) (citations omitted). “The

 decision to grant or deny a mistrial rests within the sound discretion of the trial

 court.” State v. Bonney, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991). “An abuse of

 discretion occurs only upon a showing that the judge’s ruling was so arbitrary that it

 could not have been the result of a reasoned decision.” State v. Salentine, 237 N.C.

 App. 76, 81, 763 S.E.2d 800, 804 (2014) (citation and internal quotation marks

 omitted), disc. review denied, 368 N.C. 256, 771 S.E.2d 308 (2015).

 B. Analysis

¶ 44 “When juror misconduct is alleged, it is the trial court’s responsibility to make

 such investigations as may be appropriate, including examination of jurors when

 warranted, to determine whether misconduct has occurred and, if so, whether such

 conduct has resulted in prejudice to the defendant.” Id. (citation and internal
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 quotation marks omitted). “Misconduct is determined by the facts and circumstances

 in each case, and this Court has held that not every violation of a trial court’s

 instruction to jurors is such prejudicial misconduct as to require a mistrial.” Id.

 (citations and internal quotation marks omitted). “The circumstances must be such

 as not merely to put suspicion on the verdict, because there was opportunity and a

 chance for misconduct, but that there was in fact misconduct.” State v. Johnson, 295

 N.C. 227, 234, 244 S.E.2d 391, 396 (1978) (citation omitted). Because “[t]he trial judge

 is in a better position to investigate any allegations of misconduct, question witnesses

 and observe their demeanor, and make appropriate findings[,]” we accord great

 weight to the trial court’s determinations regarding whether juror misconduct has

 occurred. State v. Harris, 145 N.C. App. 570, 576, 551 S.E.2d 499, 503 (2001) (citation

 omitted), appeal dismissed and disc. review denied, 355 N.C. 218, 560 S.E.2d 146

 (2002).

¶ 45 In the case at bar, the trial court received a note from the jury foreperson

 stating that Juror Mercado “spoke to his mother during lunch. He said ‘he did not

 discuss the case’ but he ‘did get her opinion.’ He did change his vote on count #2. He

 did say this openly.” (Capitalization omitted). The trial court then questioned Juror

 Mercado regarding the alleged misconduct. See State v. Burke, 343 N.C. 129, 149, 469

 S.E.2d 901, 910 (noting that the trial court has the “discretion to determine the

 procedure and scope of the inquiry”), cert. denied, 519 U.S. 1013, 136 L. Ed. 2d 409
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 (1996). Juror Mercado informed the trial court that his conversation with his mother

 did not change his decision regarding the verdicts, that he based his decision only on

 the evidence presented at trial, and that he did not discuss the facts of the case with

 his mother or with anyone else. “[T]he trial court was ultimately satisfied that no

 prejudice resulted” from Juror Mercado’s conversation with his mother. Salentine,

 237 N.C. App. at 82, 763 S.E.2d at 805.

¶ 46 We therefore conclude that “[t]he trial court conducted a thorough inquiry into

 the circumstances in question and determined from the evidence before it that no

 juror had been improperly influenced. . . . [D]efendant has failed to show that the

 trial court abused its discretion by denying his . . . motion for a mistrial.” Bonney, 329

 N.C. at 74, 405 S.E.2d at 152.

 III. Satellite-Based Monitoring

 A. Imposition of Lifetime Satellite-Based Monitoring

¶ 47 Defendant next contends that the trial court erred in imposing lifetime

 satellite-based monitoring. Defendant’s satellite-based monitoring hearing was brief

 and uncontested:

 [PROSECUTOR]: And, Your Honor, as to the AOC-CR-615
 form, he already has lifetime registration based on the
 conviction of rape. Nevertheless, I think we still need to
 make findings in this case. We would contend that Number
 1 should be B, sexually violent offense; Number 2 should
 be he has not been classified as a sexually violent predator;
 Number 3 should be he is a recidivist as of this conviction;
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

Number 4, the offense of conviction is not an aggravated
offense; Number 5, the offense, A, did involve the physical,
mental, or sexual abuse of a minor as to registration.
Number 1, since the recidivist finding is appropriate,
would be A, which is registration for his natural life, and
Number 2, again, would be B again upon a finding of being
recidivist, natural life is the appropriate registration.

THE COURT: [Defense counsel], do you wish to be heard?

[DEFENSE COUNSEL]: Actually, perhaps [the
prosecutor] will just let me take a look at what he had
checked off. I -- everything he said sounds exactly right. I
just want to -- I don’t have that form on me. I’m sorry.

[PROSECUTOR]: All right.

 (Pause.)

[DEFENSE COUNSEL]: No objection, Your Honor.

THE COURT: All right. The Court, in hearing from the
attorneys -- and this is under AOC-CR-615 form, Judicial
Findings and Order For Sex Offenders, Active Punishment,
Court does find under Paragraph 1(b), that this was a
sexually violent offense under North Carolina General
Statutes 14-208.6(5) or an attempt; that under Paragraph
2, the defendant has not been classified as a sexually
violent predator; Number 3, defendant is a recidivist under
14-208.6(2b); Paragraph Number 4, the offense of
conviction is not an aggravated offense; Paragraph
Number 5, that it is -- did involve the mental, physical,
sexual abuse of a minor child.

 Under the order for registration, Court does order
Paragraph 1(a), that he’s ordered upon release from
imprisonment to register -- register as a sex offender for
the rest of his natural life. Under satellite-based
monitoring, 2(b), that upon his release of imprisonment,
[D]efendant shall enroll in satellite-based monitoring for
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 the rest of his natural life unless the monitoring is
 terminated pursuant to 14-208.43.

 That would be the order -- findings and the order
 with regard to AOC Form 615.

 [PROSECUTOR]: Thank you, Your Honor.

 [DEFENSE COUNSEL]: Your Honor, my client has
 instructed me to go ahead and enter a notice of appeal on
 the verdict, and we would request that the Appellate
 Defender be appointed.

¶ 48 As a preliminary matter, Defendant failed to properly appeal from the order

 imposing satellite-based monitoring. The satellite-based monitoring “statutes

 establish a civil regulatory regime[,]” State v. Singleton, 201 N.C. App. 620, 625, 689

 S.E.2d 562, 565, disc. review improvidently allowed, 364 N.C. 418, 700 S.E.2d 226

 (2010), and as such, a defendant seeking to appeal a satellite-based monitoring order

 must do so in accordance with Rule 3 of the North Carolina Rules of Appellate

 Procedure, which requires written notice of appeal. N.C.R. App. P. 3(a); State v. Lopez,

 264 N.C. App. 496, 503–04, 826 S.E.2d 498, 503–04 (2019). Defendant did not file a

 written notice of appeal but has petitioned this Court to issue its writ of certiorari to

 review the satellite-based monitoring order.

¶ 49 A defendant’s petition for writ of certiorari “must show merit or that error was

 probably committed below.” State v. Grundler, 251 N.C. 177, 189, 111 S.E.2d 1, 9

 (1959), cert. denied, 362 U.S. 917, 4 L. Ed. 2d 738 (1960). We conclude that Defendant

 has shown merit, and we allow Defendant’s petition to review his claim.
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

¶ 50 Defendant contends that the trial court erred in imposing lifetime satellite-

 based monitoring because the State failed to meet its burden of proving that the

 imposition of lifetime satellite-based monitoring amounts to a reasonable search

 under the Fourth Amendment. Here, lifetime satellite-based monitoring was ordered

 without any argument or evidence regarding the reasonableness of the Fourth

 Amendment search effected by satellite-based monitoring.

¶ 51 At the hearing, however, Defendant made no argument, objection, or motion

 that satellite-based monitoring amounted to an unreasonable search. Accordingly, he

 requests that this Court exercise its discretion to invoke Rule 2 of the North Carolina

 Rules of Appellate Procedure to reach the merits of his argument. In that we will not

 ordinarily consider a constitutional question not raised before the trial court, State v.

 Hunter, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982), “Defendant cannot prevail on

 this issue without [our] invoking Rule 2, because his constitutional argument was

 waived.” Spinks, 256 N.C. App. at 611, 808 S.E.2d at 360.

¶ 52 “In our discretion, we decline to invoke Rule 2 . . . to review Defendant’s

 unpreserved argument on direct appeal.” Id.; see also State v. Bishop, 255 N.C. App.

 767, 770, 805 S.E.2d 367, 370 (2017) (noting that because the defendant was “no

 different from other defendants who failed to preserve their constitutional arguments

 in the trial court, and because he has not argued any specific facts that demonstrate

 manifest injustice if we decline to invoke Rule 2, we do not believe this case is an
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 appropriate use of that extraordinary step”), disc. review denied, 370 N.C. 695, 811

 S.E.2d 159 (2018).

 B. Ineffective Assistance of Counsel

¶ 53 Defendant argues in the alternative that, if we decline to invoke Rule 2 to

 consider his appeal from the satellite-based monitoring order, we should conclude

 that he received ineffective assistance of counsel because his trial counsel failed to

 object to the imposition of lifetime satellite-based monitoring and failed to give proper

 written notice of appeal of the satellite-based monitoring order.

¶ 54 It is well settled that a constitutional claim of ineffective assistance of counsel

 is not available to defendants in this context because, as noted above, satellite-based

 monitoring proceedings are civil, not criminal, in nature. State v. Wagoner, 199 N.C.

 App. 321, 332, 683 S.E.2d 391, 400 (2009) (holding that ineffective assistance of

 counsel claims are not available in appeals from satellite-based monitoring

 proceedings), aff’d per curiam, 364 N.C. 422, 700 S.E.2d 222 (2010).

¶ 55 Defendant’s argument that Wagoner “effectively overruled” prior precedent

 holding that ineffective assistance of counsel claims are available in appeals from

 satellite-based monitoring orders, and that we must instead follow the earlier

 precedent, is inapt. See State v. Wooten, 194 N.C. App. 524, 529–31, 669 S.E.2d 749,

 752–53 (2008) (addressing merits of ineffective assistance of counsel claim from

 satellite-based monitoring order without considering whether the defendant was
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 entitled to bring such a claim), disc. review denied, cert. dismissed, 363 N.C. 138, 676

 S.E.2d 308 (2009).

¶ 56 Our Court first addressed the underlying question—whether a constitutional

 ineffective assistance of counsel claim is available to defendants in appeals from

 satellite-based monitoring orders at all—in Wagoner. Therefore, we must follow

 Wagoner as binding precedent, and dismiss Defendant’s constitutional ineffective

 assistance of counsel claim. In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37

 (1989) (“Where a panel of the Court of Appeals has decided the same issue, albeit in

 a different case, a subsequent panel of the same court is bound by that precedent,

 unless it has been overturned by a higher court.”). We note, too, that our Supreme

 Court affirmed Wagoner in a per curiam opinion, further underscoring its status as

 binding precedent. See State v. Davis, 198 N.C. App. 443, 447, 680 S.E.2d 239, 243

 (2009) (The Court of Appeals’ “responsibility is to follow established precedent set

 forth by our Supreme Court.” (citation omitted)).

¶ 57 Nevertheless, Defendant also raises a claim that he received ineffective

 assistance of counsel under his statutory right to counsel, stemming from N.C. Gen.

 Stat. § 7A-451(a)(18) (2019) (providing that “[a]n indigent person is entitled to

 services of counsel” in “[a] proceeding involving placement into satellite monitoring”).

 Defendant presents an issue of first impression in our Court.

¶ 58 “Under North Carolina law, indigent[ parties] are entitled to court-appointed
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 counsel whenever they are involved in adversarial proceedings that jeopardize their

 liberty interests.” State v. Cummings, 346 N.C. 291, 317, 488 S.E.2d 550, 566 (1997)

 (citing N.C. Gen. Stat. § 7A-451 (1996)), cert. denied, 522 U.S. 1092, 139 L. Ed. 2d 873

 (1998). Indeed, our appellate courts have previously held that the statutory right to

 counsel includes the right to effective counsel. See In re T.N.C., 375 N.C. 849, 854, 851

 S.E.2d 29, 32 (2020) (termination of parental rights proceedings); In re C.W.N., Jr.,

 227 N.C. App. 63, 65, 742 S.E.2d 583, 585 (2013) (juvenile delinquency proceedings);

 In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996) (termination

 of parental rights proceedings); In re Bishop, 92 N.C. App. 662, 664–65, 375 S.E.2d

 676, 678 (1989) (same).

¶ 59 In Bishop, we explained the reasons that the statutory right to counsel includes

 the right to effective counsel, together with a remedy for the violation of that right:

 The parents’ right to counsel in a proceeding to terminate
 parental rights is now guaranteed in all cases by statute. A
 parent’s interest in the accuracy and justice of the decision
 to terminate his or her parental rights is a commanding
 one. By providing a statutory right to counsel in
 termination proceedings, our legislature has recognized
 that this interest must be safeguarded by adequate legal
 representation. If no remedy is provided for inadequate
 representation, the statutory right to counsel will become
 an “empty formality.” Therefore, the right to counsel
 provided by [statute] includes the right to effective
 assistance of counsel.

 92 N.C. App. at 664–65, 375 S.E.2d at 678 (citations omitted). Our Supreme Court
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 cited this analysis with approval in its recent decision in T.N.C., adding that

 “[c]ounsel necessarily must provide effective assistance, as the alternative would

 render any statutory right to counsel potentially meaningless.” 375 N.C. at 854, 851

 S.E.2d at 32.

¶ 60 While our Courts have not extended this reasoning to counsel in satellite-based

 monitoring hearings, we see no reason—and the State makes no argument—that we

 should not consider Defendant’s statutory ineffective assistance of counsel claim.

 Indeed, our Supreme Court has noted that the imposition of satellite-based

 monitoring “constitutes a substantial intrusion into [defendants’ Fourth Amendment]

 interests[.]” State v. Grady (“Grady III”), 372 N.C. 509, 544–45, 831 S.E.2d 542, 568

 (2019). Thus, in accordance with our opinion in Bishop, we conclude that

 [b]y providing a statutory right to counsel in [satellite-
 based monitoring] proceedings, our legislature has
 recognized that this interest must be safeguarded by
 adequate legal representation. If no remedy is provided for
 inadequate representation, the statutory right to counsel
 will become an “empty formality.” Therefore, the right to
 counsel provided by [§ 7A-451(a)(18)] includes the right to
 effective assistance of counsel.

 92 N.C. App. at 664–65, 375 S.E.2d at 678 (citations omitted).

¶ 61 We analyze statutory ineffective assistance of counsel claims under the two-

 prong standard established in State v. Braswell, 312 N.C. 553, 324 S.E.2d 241 (1985).

 T.N.C., 375 N.C. at 854, 851 S.E.2d at 33. Therefore, to assert a statutory ineffective
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 assistance of counsel claim on appeal from the imposition of satellite-based

 monitoring, a defendant must show “that counsel’s performance was deficient and

 that this deficiency was so serious as to deprive the party of a fair hearing.” Id. at

 856, 851 S.E.2d at 34 (2020). In determining whether counsel’s performance was

 deficient, we accord great deference to matters of strategy, State v. Fletcher, 354 N.C.

 455, 482, 555 S.E.2d 534, 551 (2001), cert. denied, 537 U.S. 846, 154 L. Ed. 2d 73

 (2002), and we “evaluate the conduct from counsel’s perspective at the time[,]” State

 v. Roache, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (quoting Strickland v.

 Washington, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694 (1984)). To demonstrate

 prejudice, the defendant must establish “a reasonable probability that, but for

 counsel’s errors, there would have been a different result in the proceedings.”

 Braswell, 312 N.C. at 563, 324 S.E.2d at 248.

¶ 62 In the instant case, defense counsel did not object to the imposition of satellite-

 based monitoring, raise a constitutional argument regarding the imposition of

 satellite-based monitoring, or file written notice of appeal from the satellite-based

 monitoring order. We can discern no strategic reason for counsel to decline to object

 to or offer a constitutional argument regarding the imposition of satellite-based

 monitoring in this case. Prior to Defendant’s satellite-based monitoring hearing, our

 Court’s precedent had already established that, in satellite-based monitoring

 proceedings, the State bears the burden of establishing that the imposition of
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 satellite-based monitoring constitutes a reasonable search under the Fourth

 Amendment, and that the trial court must consider the totality of the circumstances

 before imposing satellite-based monitoring. State v. Morris, 246 N.C. App. 349, 352,

 783 S.E.2d 528, 530 (2016); State v. Blue, 246 N.C. App. 259, 265, 783 S.E.2d 524, 527

 (2016). Nor can we see a strategic reason for counsel to fail to properly file notice of

 appeal from the order.

¶ 63 Moreover, it is evident that counsel’s deficient performance prejudiced

 Defendant. A trial court errs where it orders lifetime satellite-based monitoring

 without evidence that the enrollment constitutes a reasonable Fourth Amendment

 search. Blue, 246 N.C. App. at 265, 783 S.E.2d at 527.

¶ 64 In the instant case, had counsel lodged an objection regarding the

 reasonableness of satellite-based monitoring or appealed from the order imposing

 lifetime satellite-based monitoring, it is reasonably probable that the result of the

 proceeding would have been different. See Braswell, 312 N.C. at 563, 324 S.E.2d at

 248; see also State v. Tucker, 266 N.C. App. 588, 589, 832 S.E.2d 258, 259 (“Simply

 put, after [State v.] Griffin, trial courts cannot impose satellite-based monitoring

 unless the State presents actual evidence—such as ‘empirical or statistical reports’—

 establishing that lifetime satellite-based monitoring prevents recidivism.”),

 remanded for reconsideration in light of Grady III, 373 N.C. 251, 835 S.E.2d 442

 (2019), on remand at ___ N.C. App. ___, 843 S.E.2d 486, 2020 N.C. App. LEXIS 491
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

 (2020) (unpublished); Spinks, 256 N.C. App. at 610, 808 S.E.2d at 360 (noting that

 “[u]nder our precedents, if [the d]efendant had challenged the constitutionality of the

 [satellite-based monitoring] as applied to him, we would have been required to

 reverse the court’s order of [satellite-based monitoring]” where the State offered no

 evidence and the trial court made no findings regarding the reasonableness of

 satellite-based monitoring).

¶ 65 Accordingly, we conclude that Defendant received statutory ineffective

 assistance of counsel with regard to the satellite-based monitoring hearing. We

 therefore reverse the satellite-based monitoring order and remand with instructions

 for the trial court to conduct a hearing on the reasonableness of the imposition of

 satellite-based monitoring.

 Conclusion

¶ 66 For the foregoing reasons, we conclude that the trial court properly denied

 Defendant’s motion to dismiss for an alleged speedy-trial violation, and that the trial

 court properly denied Defendant’s motion for a mistrial. We therefore hold that

 Defendant received a fair trial, free from error.

¶ 67 However, because we hold that Defendant received ineffective assistance of

 counsel at the satellite-based monitoring hearing, we reverse the satellite-based

 monitoring order and remand for a hearing at which the trial court shall determine

 whether the imposition of satellite-based monitoring is reasonable as applied to
 STATE V. SPINKS

 2021-NCCOA-218

 Opinion of the Court

Defendant.

 NO ERROR IN PART; REVERSED IN PART AND REMANDED.

 Judges DILLON and COLLINS concur.